[No. 9995–4–III. Division Three. May 22, 1990.]

*In the Matter of the Marriage of* JOHN ROY
HAUGH, *Appellant, and* FLORENCE
ASHLEY FOCHT, *Respondent.*

*John Roy Haugh,* pro se.

*Lee B. Vandegrift* and *Young, Monnette & Vandegrift,* for respondent.

THOMPSON, J.—John R. Haugh appeals an order clarifying the military pension award provisions of a decree dissolving his marriage with Florence Ashley Focht (formerly Haugh), and finding him in contempt. We reverse and remand for reclarification of the decree.

Mr. Haugh and Ms. Focht were married on December 30, 1955. The marriage was dissolved on March 13, 1985. The decree awarded custody of their child to Ms. Focht, and made the following provision regarding Mr. Haugh's military pension:

3.9 *Pension.* The Petitioner [Mr. Haugh] is currently receiving $1,440.00 a month retirement pay from the United States Navy before deductions, for life insurance and federal income taxes. Petitioner's pension is based on 26 years of service and Petitioner and Respondent were married 22 of the years Petitioner was in the armed services. Said 22/26ths of the Naval pension is deemed to be community property. Respondent is awarded $609.23 a month of the Naval pension with the $609.23 to be paid to Respondent by the United States Navy. This is on [*sic*] part based on a finding that Petitioner's federal income tax liability will be reduced as a result of the award to Respondent. Until the necessary paper work can be completed so that the payments are received by Respondent directly from the United States Navy, the Petitioner shall be ordered to pay to the Respondent $609.23 a month from his retired pay. The payments received directly from the Petitioner are due by the 15th of each month starting March, 1985.

The parties returned to court 2 years later. They stipulated, among other things, to a change in custody of the child. The court Commissioner, after finding the earlier decree failed to account for future increases or decreases in Mr. Haugh's pension, concluded:

4. That in as much as the Court did not determine nor address the effect of any increases or decreases in the gross monthly retirement benefit, this Court must now determine the effect of such increases or decreases based upon the specific findings of the Court at the time of entry of the Decree of Dissolution;

5. That any increase or decrease in the gross monthly retirement benefit should be shared proportionately by Petitioner and Respondent in the following manner: that Respondent should be awarded 42.30% of any increase in the gross monthly retirement benefit and similarly, any decrease in the gross monthly retirement benefit should be shared at the rate of 42.30%;

6. It is clear to this Court that at the time of entry of the Decree of Dissolution, the Court intended that Respondent was to receive approximately half of that portion of the retirement benefit characterized as community property and as such, Respondent should receive the benefits in the same manner of any increases and should suffer the consequences of any decrease in this asset so as to preserve the equitable distribution set forth by the Court in the Decree of Dissolution of Marriage.

This clarification was entered on January 6, 1988. On July 14, 1988, Ms. Focht sought further modification, in part

because the Navy refused to make direct payments to her on the basis of the January 6 order.[1] Also, it had become apparent that the Navy, before allocating the shares of retirement pay, was withholding amounts for federal income taxes on the entire amount, and was reporting the entire retirement pay, and withholding, on Mr. Haugh's W–2 form.[2] On April 12, 1989, the court entered the order at issue here. It provided:

2. <u>RETIREMENT CLARIFICATION</u>: . . . The Decree of Dissolution of Marriage entered in the above matter, as previously modified, and as previously clarified, is clarified further as follows: The Petitioner's retirement payment from the United States Navy is awarded to the parties as follows:

(a) The Navy shall deduct the appropriate amount of federal withholding tax from the entire gross amount of the retired pay. The Navy shall issue to the Petitioner a W–2 statement each year, which reports the entire gross pay to the IRS as the Petitioner's income. The W–2 statement shall further show the entire federal income tax withheld. Except as provided in this sub–paragraph, the Petitioner shall be solely responsible for and hold the Respondent FOCHT harmless from the federal income tax consequences of the receipt of military retirement pay. The Court finds that the amount withheld by the Navy and reported on the Petitioner's W–2 statement is sufficient to discharge both the Petitioner's and Respondent's federal

---

[1]The order apparently did not meet the technical requirements of a "court order", under the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408(a)(2).

[2]The Navy outlined its position in a letter, dated October 5, 1988, addressed to counsel for Ms. Focht:

"With respect to the tax treatment, we have been informed that Section 31.3401(a)–1(b)(5) of the Employment Tax Regulations of the Internal Revenue Service requires the Navy Finance Center to treat that portion of the member's retired pay which would be paid to your client under the Uniformed Services Former Spouses' Protection Act, Public Law 97–252, as part of the total remuneration received by the member as the employee. Therefore, the entire gross retired pay, including any direct payment to your client, is subject to the federal income tax withholding. We cannot say who has actual tax liability.

"Similarly, a W–2 form stating the member's total earnings and taxes withheld will be issued to the member only. Since your client is not an employee of the Navy, no taxes can be withheld on her behalf from any portion of the member's retired pay which she receives pursuant to a divorce decree. Therefore, you will have to resolve any discrepancy in your tax liability by agreement with the member with or without the court's approval."

income tax liability for receipt of the retired pay, except for an average deficiency of $525.00 per year. The Petitioner should be responsible for 57.7% of the average deficiency and the Respondent should be responsible for 42.3% of the average deficiency. Therefore, the Respondent FOCHT shall pay to the Petitioner, no later than the 1st day of April each year, commencing the 1st day of April, 1986, the sum of $225.00, which shall discharge her obligation for the deficient income tax payable on the entire gross military retirement pay. . . . If the withheld amount plus the $225.00 payment from the respondent results in a refund to the Petitioner, the refund shall be his sole and separate property. If the withheld amount plus the $225.00 payment results in a deficiency owing by the Petitioner, he shall be solely responsible to pay such deficiency and hold the Respondent harmless therefrom.

(b) The Petitioner is permanently restrained from authorizing any deductions from his gross military retirement pay which would result in a lesser disposable retirement pay as defined by the Uniformed Services Former Spouses' Protection Act, Public Law 97–252, as amended, hereafter called the Act. . . . The Petitioner shall indemnify and hold the Respondent harmless from any authorized deductions from the gross pay which result in lesser disposable retirement pay as defined by the Act, which deductions are made by the Petitioner or by third party creditors of the Petitioner.

. . . .

(d) The Petitioner, JOHN ROY HAUGH, is awarded fifty–seven and seven–tenths percent (57.7%) of his disposable retirement pay from the United States Navy as defined by the Act. The Respondent, FLORENCE ASHLEY FOCHT, is awarded forty–two and three–tenths percent (42.3%) of the Petitioner's disposable retirement pay from the United States Navy as defined by the Act.

Finally, the order held Mr. Haugh in contempt of court for his "wilful obstruction" of Ms. Focht's visitation rights. It sentenced him to 10 days in jail, suspended on the condition that visitation is provided on the previously ordered schedule.

We first address whether the court erred in holding Mr. Haugh in contempt of court. It is unclear precisely what he is challenging here. In his statement of the issues, he appears to contend the court erred in failing to notify him of his right to a jury trial and appointed counsel. He does not support this contention with argument, and instead addresses various factual matters.

 Because the factual basis for imposing the contempt sanction is not in the record, it is impossible to review the issues Mr. Haugh raises. The appellant has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue. RAP 9.2(b); *State v. Rienks,* 46 Wn. App. 537, 544, 731 P.2d 1116 (1987), *review denied,* 110 Wn.2d 1021 (1988); *Allemeier v. UW,* 42 Wn. App. 465, 472–73, 712 P.2d 306 (1985), *review denied,* 105 Wn.2d 1014 (1986). Also, a contention unsupported by legal argument is deemed waived. *State v. Adams,* 107 Wn.2d 611, 615, 732 P.2d 149 (1987).

 At any rate, the contention lacks substantive merit. There are two basic categories of contempt orders: punitive (criminal) and coercive (civil). *State v. Boatman,* 104 Wn.2d 44, 700 P.2d 1152 (1985). Both categories require certain, although different, procedural safeguards. *In re Marriage of Nielsen,* 38 Wn. App. 586, 588, 687 P.2d 877 (1984). If the order is punitive, the person cited for contempt is entitled to a trial by jury, *Boatman,* at 48, but if the proceeding is civil, a jury trial is not required. *State v. Browet, Inc.,* 103 Wn.2d 215, 218, 691 P.2d 571 (1984).

> In determining whether a particular contempt sanction is civil or criminal, we look to the substance of the proceeding and the character of the relief that the proceeding will afford. If the purpose of the contempt sanction is punitive and results in a determinate jail sentence, with no opportunity for the contemnor to purge himself of the contempt, it is criminal. If the purpose of the sanction is to coerce compliance with a lawful court order, and a contemnor is jailed only so long as he fails to comply with such order, then the contempt is civil. *State v. Browet, Inc.,* 103 Wn.2d 215, 218, 691 P.2d 571 (1984).

*In re King,* 110 Wn.2d 793, 799, 756 P.2d 1303 (1988).

In this case, the court's order clearly was coercive. It ordered Mr. Haugh to spend 10 days in jail, but suspended the sentence on condition that he comply with the previously ordered visitation schedule. Mr. Haugh was not entitled to a jury trial.

Even in a civil contempt proceeding, an indigent person is entitled to appointed counsel. *Tetro v. Tetro,* 86 Wn.2d

252, 254–55, 544 P.2d 17 (1975); *In re Marriage of Wulfsberg,* 42 Wn. App. 627, 713 P.2d 132 (1986). Here, however, the record does not indicate Mr. Haugh claimed to be indigent, nor does it show he ever requested appointed counsel. His argument on appeal is without merit.

■ Mr. Haugh next contends the court erred in concluding the original decree required clarification. RCW 26.09.170 provides in pertinent part:

> The provisions [of a dissolution decree] as to property distribution may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state.

Interpreting this provision, the Supreme Court has held:

> [T]he decree, or agreement merged therein, may be subject to a declaratory action to ascertain the rights and duties of the parties. [*In re Marriage of Mudgett,* 41 Wn. App. 337, 340, 704 P.2d 169 (1985)]; *see also Reshetar v. Reshetar,* 310 Minn. 563, 246 N.W.2d 846 (1976). *But see Mills v. Mills,* 512 P.2d 143, 148 (Okla. 1973). A declaratory action is proper only where the language of the decree is ambiguous, *Mudgett,* at 340–41; *Royal v. Royal,* 246 Ga. 229, 271 S.E.2d 144 (1980), or where a party seeks to divide property not disposed of by the trial court at the time of dissolution. *See Ross v. Pearson,* 31 Wn. App. 609, 614, 643 P.2d 928 [*review denied,* 97 Wn.2d 1030] (1982). A declaratory judgment action is not proper where there is no ambiguity in the decree or where a party seeks relief based upon unilateral mistake, unconscionability or public policy. *Mudgett,* at 341.

*Byrne v. Ackerlund,* 108 Wn.2d 445, 453, 739 P.2d 1138 (1987).

Here, it is unclear which order Mr. Haugh is challenging. He insists the original decree was unambiguous, yet he failed to appeal the January 6, 1988, clarification. His objections to the latest clarification/modification appear to relate primarily to the income tax provisions, which we will address later. Nevertheless, as each succeeding order of clarification/modification in this case is inextricably tied to the others, it appears logical to start at the beginning.

The original decree failed to make provision for future increases or decreases in the retirement pay. To this extent, the decree was ambiguous, and failed to dispose of all the

parties' property. It was subject to clarification under *Byrne.*

In addition, the original decree awarded Ms. Focht a flat dollar amount, as a fraction of Mr. Haugh's *gross* retirement pay. This raises an issue involving the application of the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408. Before 1981 in Washington, military retirement pay was characterized as community property subject to division in a dissolution. *Wilder v. Wilder,* 85 Wn.2d 364, 366–67, 534 P.2d 1355 (1975). However, in 1981 the United States Supreme Court held federal law preempted states' domestic relations laws and prohibited the division of military retired pay as community property in a dissolution. *McCarty v. McCarty,* 453 U.S. 210, 232–33, 69 L. Ed. 2d 589, 101 S. Ct. 2728, 2741 (1981). Congress reacted quickly by enacting the USFSPA, which permits states, with various limitations, to treat disposable retirement pay as community property. 10 U.S.C. § 1408(c)(1); *see In re Marriage of MacDonald,* 104 Wn.2d 745, 748, 709 P.2d 1196 (1985).

This focus on "disposable" pay appears to be at least part of the cause of the problems in this case. The USFSPA permits states to treat as marital property, divisible on divorce, *only* that part of a retiree's pay that is "disposable". *Mansell v. Mansell,* 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989).[3] "Disposable" retirement pay is defined by the statute as the total monthly pay to which a retiree is entitled, minus amounts withheld for federal income taxes, and various other purposes. *See* 10 U.S.C. §

---

[3]We do not decide here that *Mansell* is retroactively applicable to decrees entered before it was filed. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971); *National Can Corp. v. Department of Rev.,* 109 Wn.2d 878, 749 P.2d 1286, *appeal dismissed, cert. denied,* 486 U.S. 1040, 100 L. Ed. 2d 615, 108 S. Ct. 2030 (1988). Because there are adequate other reasons for our decision today, we find it unnecessary to rely on *Mansell.* Nevertheless, we address the *Mansell* holding because it undoubtedly will apply to the court's clarification/modification order on remand.

1408(a)(4). The original decree addressed Mr. Haugh's *gross*, rather than "disposable", retirement pay.

The January 6, 1988, order attempted to resolve the original decree's failure to address future increases in the retirement pay. However, its confusing language retained the original decree's flat dollar figure, but applied a percentage to any increase or decrease in the retirement pay. The order was unacceptable to the Navy, which refused to make direct payments to Ms. Focht on that basis. In view of the original decree's clear intent that Ms. Focht should receive her share of the retirement pay as direct payment from the Navy, further clarification was necessary. Moreover, the decree continued to focus on Mr. Haugh's *gross* retirement pay.

The court's latest effort at clarification also appeared to divide Mr. Haugh's *gross* retirement pay.[4] It also improperly attempted to adjust the parties' federal tax liabilities. Under the federal tax code, amounts distributed as retirement pay to a former spouse are considered gross income to that former spouse, unless they are rolled over into another qualified pension plan. I.R.C. § 402(a)(9) (26 U.S.C. § 402(a)(9)); *see* Washington State Bar Ass'n, *Family Law Deskbook* § 41.2, at 41–3 (1989). However, the military withholds income taxes on the entire amount of the retirement pay, regardless of how much is distributed to the former spouse. See footnote 2.

■■ Recognizing that Mr. Haugh was bearing the burden of having amounts withheld as if he were receiving the entire pension, and apparently on the basis of an affidavit submitted by an accountant, the court ordered Ms. Focht to pay $225 yearly and ordered Mr. Haugh to hold Ms.

---

[4]The court at one point apparently attempted to retain the original decree's proportionate shares by applying them to Mr. Haugh's gross retirement pay. Thus, instead of receiving a flat $609.23 each month, Mr. Focht would receive 42.3% (609.23 of $1,440) of Mr. Haugh's gross pay, whatever that amount would be. See Order, part 2(a). However, the court later applied the same percentage to Mr. Haugh's "disposable" pay, see Order, part 2(d), which is inconsistent and ambiguous.

Focht harmless for the federal tax liability. In effect, the court was ordering Mr. Haugh to pay tax on Ms. Focht's gross income, and was authorizing Ms. Focht to avoid paying tax on the gross income, in return for a flat yearly payment.

This arrangement clearly conflicts with I.R.C. § 402(a)(9). Although states retain broad authority in the area of domestic relations, *see In re Marriage of Peacock,* 54 Wn. App. 12, 14–16, 771 P.2d 767 (1989), this is a matter fully within the federal sphere, and preempted by the Internal Revenue Code.[5] The court's order exceeded the scope of its authority in this area.

 The order also restrained Mr. Haugh from altering the deductions from his retirement pay. The court obviously took this action foreseeing the possibility that Mr. Haugh could increase his deductions and thus reduce the amount paid to Ms. Focht. The California Supreme Court has expressed similar dismay:

> [F]ormer spouses whose community property interests were acquired over exactly the same time period, whose military retiree spouses receive exactly the same gross retirement benefits, are subject to receiving different sums if, for example, their respective spouses are in different tax brackets, or if one understates his dependents, or if one commits torts against the government or incurs other indebtednesses to it for which the ex–spouse bears no liability. We can conceive of no legitimate governmental interest . . . which would rationally support such disparate treatment.

(Footnote omitted.) *Casas v. Thompson,* 42 Cal. 3d 131, 143–44, 720 P.2d 921, 928–29, 228 Cal. Rptr. 33, *cert. denied,* 479 U.S. 1012, 93 L. Ed. 2d 713, 107 S. Ct. 659 (1986).

---

[5] Ms. Focht cites two cases as authority for states to assign federal tax liability. *Peacock* involved allocation of a dependency exemption for a minor child in a dissolution action, as provided by RCW 26.09.050. The allocation did not assign tax liability, nor did it permit either party to avoid payment of taxes on income received. *Tonkoff v. Tonkoff,* 66 Wn.2d 928, 405 P.2d 728 (1965) involved disposition of federal tax liability, which the parties presumably had incurred as a community obligation during the marriage. The court properly allocated the liability as a community debt. The decision did not undertake to adjust the future tax responsibilities of the parties, as the court did here.

Despite the court's understandable concern, however, the order is overly broad, potentially touching on federal tax matters. The court's order prohibited Mr. Haugh from authorizing any deduction that would reduce the payments to Ms. Focht. However, federal income tax withholding is one of the deductions permitted in the statute defining "disposable" pay. 10 U.S.C. § 1408(a)(4). The court's order here prohibited Mr. Haugh from changing the withholding amount, even if he may be required to do so by federal law. For example, when the parties' minor child is no longer dependent, Mr. Haugh should revise his tax withholding to reflect the loss of the deduction. The change presumably would increase the amount withheld from his retirement pay, and thus would reduce the amount received by Ms. Focht. This change, required by federal law, was forbidden by the court's order. Like the portion of the order relating to tax liabilities, the court's action was preempted by federal law.

We reverse and remand for reclarification of the disposition of Mr. Haugh's military pension. As guidance to the court, we further address two facets of the USFSPA.

First, as we observed above, the statute permits state courts to address only "disposable" military retirement pay. *See Mansell v. Mansell, supra.* However, the court is required under RCW 26.09.080 to order a "just and equitable" distribution of the parties' property, both community and separate,

> after considering all relevant factors including, but not limited to:
> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage; and
> (4) The economic circumstances of each spouse at the time the division of property is to become effective . . ..

Certainly among the relevant factors in this case are Mr. Haugh's "economic circumstances", including his receipt of the difference between the "disposable" and gross military retirement pay. *See In re Marriage of Dessauer,* 97 Wn.2d 831, 650 P.2d 1099 (1982), *abandoned on other grounds in*

*In re Marriage of Smith,* 100 Wn.2d 319, 324, 669 P.2d 448 (1983); *In re Marriage of Brown,* 98 Wn.2d 46, 653 P.2d 602 (1982); *Smith; In re Marriage of Konzen,* 103 Wn.2d 470, 693 P.2d 97, *cert. denied,* 473 U.S. 906, 87 L. Ed. 2d 654, 105 S. Ct. 3530 (1985).

In addition, we note that the original decree intended that Ms. Focht would receive her share of the disposable retirement pay directly from the military. The USFSPA limits the amount that may be ordered paid directly to a retiree's former spouse to 50 percent of the disposable pay. 10 U.S.C. § 1408(e)(1). Thus, while the court on remand may increase Ms. Focht's share in recognition of Mr. Haugh's "economic circumstances", it may not award, as a direct payment from the military, more than 50 percent of the disposable pay.

Reversed and remanded.

GREEN, A.C.J., and SHIELDS, J., concur.