IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39437-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDON EDWARD YOUNG, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Brandon Young was originally charged with domestic violence crimes after B.A. called 911 twice to report that Young was on his way over to her apartment after threatening her on the phone. The court imposed a pretrial no-contact order. While these charges were pending, Young called B.A. numerous times from jail. After the original charges were dismissed, the State filed new charges against Young for witness tampering and violating the pretrial no-contact order. A jury found Young guilty of five counts of witness tampering, five counts of violating a domestic violence no-contact order, and one count of attempted no-contact order violation.

Young appeals raising several issues. First, he challenges the sufficiency of evidence to support his convictions for violating a no-contact order, claiming that the State failed to prove the order was valid on the day the new charges were filed. Second,

he argues the trial court erred in admitting hearsay statements when it allowed the State

to play B.A.'s two 911 calls from the original incident. Third, he claims the court erred

by denying his request for a mental health sentencing alternative (MHSA). Finally, he

claims the court should strike his victim penalty assessment (VPA).

We find no error and affirm Young's convictions and sentence. We remand with

instructions to strike the VPA.

BACKGROUND

*Arrest for Assault Domestic Violence*

On December 6, 2021, B.A. and her neighbor called 911 to make a report about

B.A.'s boyfriend, Brandon Young. They explained that Young had threatened B.A. the

night before and then texted B.A. moments earlier and indicated he was on his way over

to her home. B.A. told the 911 dispatcher they had broken up that morning and Young

told her that all his stuff was at her house and that it did not matter what she said, he was

on his way to get it. She explained that she was at her neighbor's apartment because she

did not feel safe to go home because Young threatened to beat down her door and kick it

in. Around that same time, she received another text from Young that he was "coming up

now." Ex. P-3 at 05:19-05:20. The 911 dispatcher told them both to stay safe, and the

call ended.

About 15 minutes later, B.A. and her neighbor called 911 a second time. In this

call, B.A. explained she was calling back because Young was beating on her door and

2

said that he was going to crawl through her roommate's window. She said she was still at her neighbor's apartment, but that Young said her window was unlocked and to "keep fucking ignoring me bitch." Ex. P-3 at 00:38-00:45. She could hear Young outside but did not want to open the door because she was scared. She heard a window open and believed that Young had entered her apartment. Following this incident, Young was arrested and charged with fourth degree assault-domestic violence and harassment-domestic violence. Two days later, the court imposed a pretrial domestic violence no-contact order on Young, listing B.A. as the protected person.

Detective Tyler Smith investigated and discovered that after the no-contact order was issued, Young had called B.A. over 200 times from jail. Detective Smith called the number Young was contacting from jail and confirmed it was B.A., recognizing her voice from the 911 calls. In addition to this phone number, B.A. provided another number to Detective Smith that revealed several other jail calls from Young.

On February 28, 2022, the court dismissed Young's original charges with prejudice and presumably recalled the no-contact order.

*Charges for Witness Tampering and Violation of a No-Contact Order.*

In early March, the State charged Young with five counts of tampering with a witness, five counts of violating a no-contact order, and one count of attempted violation of a no-contact order. These alleged violations all occurred between December 13, 2021 and February 10, 2022, before the assault-domestic violence and harassment-domestic

violence charges were dismissed and the no-contact order was recalled. The new charges stemmed from the many phone calls from Young to B.A. while he was in jail.

At trial, the State sought to introduce the two 911 calls from the original charges. Young objected, arguing the 911 calls violated his right to confrontation and were inadmissible hearsay. After listening to the recordings, the trial court overruled Young's objection relating to the confrontation clause, concluding that the calls were nontestimonial. Additionally, it overruled his hearsay objection and found both 911 calls qualified as excited utterances. As to the first call, the court found there was some excitement, clear stress, and although there were some threats that occurred the night before, the passage of time did not make it less stressful. The trial court found that what tipped the scale here was that the declarants received information that "Young was coming over and there was a statement that [B.A.] didn't feel safe," indicating some current excitement related to the anticipation of Young coming over in that very moment. However, the court made clear that if the statements were strictly based on the threats from the night before, this would not have qualified as an excited utterance.

As to the second call, the court found B.A. appeared calm during her statement. However, although she appeared calm, she did admit she was scared. The court explained that B.A. observed Young go into her home, and indicated fear by describing that he was beating down her door and trying to crawl through her window. Although the

4

court found this was a closer call because of her tone, it found she continued to express fear as a result of the event that was occurring.

*Sentencing*

The jury found Young guilty on all counts.  At sentencing, Young requested an MHSA, asserting that he had been previously diagnosed with bipolar disorder, PTSD,[1] antisocial personality disorder, and substance abuse disorder.  In denying his request, the court found that Young failed to meet his burden of showing he currently suffered from a serious mental illness.  While acknowledging that Young may have a history with bipolar disorder, his most recent diagnosis was only for PTSD and ADHD,[2] not bipolar disorder. Additionally, based on the evidence presented at trial and Young's current mental health condition, the court found that Young did not demonstrate a sufficient connection between his mental health conditions and the guilty verdicts in this matter.

Finally, the court did not find Young or the community would benefit from an MHSA.  It noted that Young had ample opportunity over the course of "many years" to engage in treatment and classes.  For example, when Young was in Idaho, "he was offered mental health treatment, substance abuse treatment, and vocational rehabilitation," all of which provided opportunities for Young to engage in rehabilitation.

---

[1] Posttraumatic stress disorder.

[2] Attention-deficit/hyperactivity disorder.

Rep. of Proc. (RP) (Dec. 14, 2022) at 201.  Based on the record before it, the court did

not find Young's true intent was to receive treatment.  It explained the advantage of an

MHSA is a substantially shorter period of incarceration, often a driving factor for

individuals.  The court found it especially disturbing that there was a no-contact order in

place, Young intentionally violated it on numerous occasions, and he chose to tamper

with the witnesses.  The court concluded that a sentencing alternative was not appropriate

and did not align with the intent of the Sentencing Reform Act of 1981 (SRA), ch. 9.94A

RCW, which is to "promote respect for the law."  RP (Dec. 14, 2022) at 204.

Young now appeals.

ANALYSIS

1.  SUFFICIENCY OF THE EVIDENCE AND VALIDITY OF THE NO-CONTACT ORDER

Young argues that the evidence was insufficient to support the convictions for

violating the no-contact order.  He contends that the State failed to prove that Young

violated a valid no-contact order because prior to the time he was charged, the trial court

had invalidated the no-contact order.  We disagree.  The evidence suggests that the no-

contact order was simply recalled when the underlying charges were dismissed, not

declared invalid.  Young's argument fails to recognize the legal distinction between an

order that has been declared invalid and an order that has been recalled.  Additionally, we

note that the validity of the no-contact order is not an essential element of the crime of

6

violating a no-contact order and the State was not required to prove that the underlying order was valid.

The "validity of [a] no-contact order is not an element of the crime" of violating a no-contact order. *State v. Miller*, 156 Wn.2d 23, 31, 123 P.3d 827 (2005). Instead, to convict Young of violating a no-contact order, the jury had to find beyond a reasonable doubt that (1) there existed a no-contact order applicable to Young, (2) Young knew of the existence of the order, (3) that on or about the date of the violation Young knowingly violated the order, and (4) Young had previously been convicted for violating the provisions of a court order twice. Clerk's Papers (CP) at 59-63. Here, the jury was instructed that it had to find "[t]hat on or about [date] there *existed* a no-contact order applicable to the defendant." CP at 59-63 (emphasis added).[3]

Nevertheless, Young maintains that the State cannot charge a person with "violating a pretrial no contact order after the order has been vacated, even if the alleged violation occurred while the order was in effect." Appellant's Br. at 17. In support of this position, Young cites *City of Tacoma v. Cornell*, 116 Wn. App. 165, 169, 64 P.3d 674 (2003). In *Cornell*, the defendant was arrested for violating a temporary no-contact order. Several weeks later, a superior court judge vacated the temporary and permanent

---

[3] Contrary to Young's assertion in his brief, the jury was not instructed that it had to find a *valid* no-contact order. Appellant's Br. at 23; CP at 59-63.

orders after finding that the petition and supporting documents failed to meet statutory requirements. After the orders were vacated, the City charged the defendant with violating the temporary no-contact order. The *Cornell* court held that the City was precluded from charging "a person for violating an order after the order has been vacated, even if the alleged violation occurred while the order was in effect." *Id*. at 170.

Young maintains that the no-contact order in this case was similarly "vacated." There is nothing in the record to support this assertion. Young did not designate the order that terminated the no-contact order as part of the record on appeal. *See* RAP 9.6(a); *In re Marriage of Haugh*, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990) (noting that an "appellant has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue[s]" on appeal). Contrary to Young's assertion that the pretrial no-contact order was vacated, the State maintains that the no-contact order was simply recalled when the underlying charges were dismissed.

The evidence presented at trial was sufficient to support the convictions for violating a no-contact order.

2. ADMISSION OF 911 CALLS AS EXCITED UTTERANCES

Young argues the trial court abused its discretion by admitting two 911 calls made by B.A. at his trial for violating the no-contact order. He contends that the calls were hearsay and the trial court erred by admitting them as excited utterances. Young asserts that the first call did not qualify as an excited utterance because it was based on threats

8

that were made the night prior and in the second call B.A. was calm and safe in her neighbor's home.

This court reviews evidentiary decisions, including a trial court's application of the excited utterance exception to the hearsay rule for abuse of discretion. *State v. Rodriquez*, 187 Wn. App. 922, 939, 352 P.3d 200 (2015). "Abuse of discretion occurs when the trial court's ruling is manifestly unreasonable or based on untenable grounds or reasons." *Id*.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial . . . offered in evidence to prove the truth of the matter asserted." ER 801(c). Generally, hearsay statements are inadmissible. ER 802. However, hearsay statements may be admissible if an exception applies. *See* ER 803.

An excited utterance is an exception to hearsay. ER 803(a)(2). An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). "A statement qualifies as an excited utterance if (1) a startling event occurred, (2) the declarant made the statement while under the stress or excitement of the event, and (3) the statement relates to the event." *State v. Magers*, 164 Wn.2d 174, 187-88, 189 P.3d 126 (2008). The first and second elements may be determined from "circumstantial evidence, such as the declarant's behavior, appearance, and condition, . . . and the

9

circumstances under which the statement is made." *State v. Young*, 160 Wn.2d 799, 809-10, 161 P.3d 967 (2007).

Based on the evidence presented, the trial court did not abuse its discretion in finding that the calls were admissible under the excited utterance hearsay exception. As a threshold matter, both statements are considered hearsay because they are statements made by B.A. outside the current trial to prove the truth of each statement. ER 801(c). Therefore, to be admissible a hearsay exception must apply.

As to the first call, the evidence supports the court's finding that B.A.'s 911 call related to the startling event of learning that Young was on his way over to her apartment and threatened to harm her or her property. Similarly, the evidence supports the court's finding that B.A. called 911 the second time as Young was at her apartment, beating on her door and crawling through her window. While the court found this was a closer call because of B.A.'s tone, she continued to express fear as a result of the event that was occurring. These findings support the court's conclusion that the second 911 call qualified as an excited utterance.

Young argues that the threats B.A. was concerned with were made the night before. The trial court disagreed and this decision was within its discretion given the evidence. In addition, the argument that B.A. appeared calm during the second call does not defeat application of the exception. The purpose of this exception is to make sure the declarant is "still under the influence of the event so as to preclude any chance of

fabrication, intervening influences, or the exercise of choice or judgment." *State v. Bryant*, 65 Wn. App. 428, 433, 828 P.2d 1121 (1992). Here, the statements made were directly to the 911 operator as the event was occurring, and importantly, there is no requirement under the rule that a person maintain a certain tone of voice for it to apply. *See* ER 803(2).

Finally, Young makes fleeting arguments that the 911 calls allowed the jury to hear B.A.'s unsworn, uncrossed testimony about Young's prior bad acts, which were only introduced to show propensity. Young did not assign error to the trial court's conclusion that the United States Constitution confrontation clause was not implicated because the 911 calls were nontestimonial, nor did he raise ER 404(b) at trial or develop this argument on appeal. We therefore decline to address these undeveloped arguments. *See State v. Stubbs*, 144 Wn. App. 644, 652, 184 P.3d 660 (2008) ("Passing treatment of an issue or lack of reasoned argument is insufficient to allow for our meaningful review."), *rev'd on other grounds*, 170 Wn.2d 117, 240 P.3d 143 (2010).

3. MENTAL HEALTH SENTENCING ALTERNATIVE

Young argues that the sentencing court failed to meaningfully consider his request for an MHSA, rejected his request based on a misinterpretation of the law, and articulated an improper basis in finding he was not a good candidate. We disagree.

Generally, a sentence within the standard sentencing range may not be appealed. RCW 9.94A.585(1). While no defendant is entitled to challenge a sentence within the

standard range, "this rule does not preclude a defendant from challenging on appeal the underlying legal determinations by which the sentencing court reaches its decision." *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). "[W]here a defendant has requested a sentencing alternative authorized by statute, the categorical refusal to consider the sentence . . . is effectively a failure to exercise discretion and is subject to reversal." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005).

When a trial court is called on to make a discretionary sentencing decision, the court "must meaningfully consider the request in accordance with the applicable law." *McFarland*, 189 Wn.2d at 56. A sentencing court errs when "it refuses categorically to impose an exceptional sentence below the standard range under any circumstance[ ]." *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). Additionally, a court errs when it operates under a "mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which he may have been eligible." *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 333, 166 P.3d 677 (2007).

Under RCW 9.94A.695(1), a defendant is eligible for an MHSA if:

(a) The defendant is convicted of a felony that is not a serious violent offense or sex offense;

(b) The defendant is diagnosed with a serious mental illness recognized by the diagnostic manual in use by mental health professionals at the time of sentencing;

(c) The defendant and the community would benefit from supervision and treatment, as determined by the judge; and

12

(d) The defendant is willing to participate in the sentencing alterative.

The decision of whether to grant an MHSA request is within the sentencing court's discretion:

> After consideration of all available information and determining whether the defendant is eligible, the court shall consider whether the defendant and the community will benefit from the use of this sentencing alternative. The court shall consider the victim's opinion whether the defendant should receive a sentence under this section. If the sentencing court determines that a sentence under this section is appropriate, the court shall waive imposition of the sentence within the standard range.

RCW 9.94A.695(4).

Young argues that the trial court's failure to impose an MHSA sentence was an abuse of discretion for several reasons. First, he asserts that the court had no basis to find that Young did not suffer from bipolar disorder, anxiety disorder, and depression. "Serious mental illness" under the statute is defined as "a mental, behavioral, or emotional disorder resulting in a serious functional impairment, which substantially interferes with or limits one or more major life activities." RCW 9.94A.695(12)(a). To determine whether a defendant has a serious mental illness, the court may rely on information including reports completed pursuant to chapter 71.05 RCW[4] and chapter

---

[4] Behavioral Health Disorders— formally Mental Illness.

13

10.77 RCW,[5] or other mental health professionals as defined in RCW 71.05.020, or other

information and records that relate to mental health services. RCW 9.94A.695(2).

Here, Young failed to produce evidence that he was currently suffering from or

diagnosed with bipolar disorder, depression, or anxiety disorder. Instead, the diagnosis

provided to the court was for PTSD and ADHD. RP (Dec. 14, 2022) at 200. Given this

evidence, the court did not abuse its discretion in finding that Young was not currently

diagnosed with a serious mental illness.

Young also contends that the court found that PTSD was not a qualifying

condition for an MHSA. This argument mischaracterizes the trial court's finding. The

court did not make a categorical conclusion that PTSD was not a serious mental illness.

Instead, the court found, based on the evidence from trial and his current mental health

condition, that Young's mental health did not *rise to the level* of being a serious mental

illness or that there was a sufficient connection between that and the guilty verdicts in

this matter. While the outright refusal to recognize bipolar disorder as a serious mental

illness would be a failure to exercise discretion, subject to reversal, that is not what

occurred here. Therefore, Young's argument fails.

Finally, even if the court did find Young was eligible, the court properly exercised

its discretion in determining that the community would not benefit from Young entering a

---

[5] Criminally Insane–Procedures.

14

sentencing alternative and that Young himself would not be willing to participate in it. The court considered Young's history of treatment opportunities and his actions in this case and concluded that Young's request for a sentencing alternative was not based on an interest in receiving treatment. The court was within its discretion to find the sentencing alternative was not appropriate or aligned with the intent of the SRA, which is to "promote respect for the law." RP (Dec. 14, 2022) at 204.

4. VPA ASSESSMENT

Next, Young challenges the imposition of the VPA fee as part of his sentence because he is indigent. Young is correct that this fee should be struck from his judgment and sentence. Under former RCW 7.68.035(1)(a), a judge was required to impose the $500 penalty assessment for one or more felony or gross misdemeanor convictions. However, earlier last year, legislation amended this statute. *See* LAWS OF 2023, ch. 449, § 1(4). This amendment had an effective date of July 1, 2023, and included a provision instructing a court not to impose the penalty assessment if the court found the defendant indigent at the time of sentencing as defined in RCW 10.01.160(3).

Here, the amendment applies to Young because the trial court found him indigent and because his case was pending on direct appeal when the changes became effective. *See State v. Ellis*, 27 Wn. App. 2d 1, 530 P.3d 1048 (2023). Therefore, we agree this fee should be struck from his judgment and sentence.

15

5.    STATEMENT OF ADDITIONAL GROUNDS (SAG)

Young raises additional claims in his SAG and we address them in turn.

*Vindictive Prosecution*

Young argues that, in the instant case, the trial court vacated the no-contact order and dismissed his assault and harassment charges.  The phone calls Young made to B.A. stemmed from those charges.  In this regard, he argues the new charges rise to the level of vindictiveness because the State is intentionally filing more serious charges in retaliation for his lawful exercise of procedural rights.

CrR 8.3(b) states that on motion of court, "the court, in the furtherance of justice, . . . may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."  We review a trial court's CrR 8.3(b) ruling for abuse of discretion.  *State v. Myers*, 27 Wn. App. 2d 798, 804, 533 P.3d 451 (2023).

Young's argument fails for several reasons.  First, Young did not file a motion per the court rule.  Second, the word "may" indicates the court has discretion to act under CrR 8.3(b).  Third, it is unclear, but it appears from Young's argument he either believes the trial court should have dismissed his charges under CrR 8.3(b) or that this court should.  Our review of the issue is limited to whether the trial court abused its discretion.  Here, we cannot find that the court abused discretion it was never asked to exercise.

*Speedy Trial*

Young claims the State failed to prosecute his charges within the speedy trial period. He contends that since the witness tampering charges were related to the original assault charge, the speedy trial time for both cases is the same. Young argues that CrR 3.3 does not directly address the question when the speedy trial clock starts to run if the State files a new charge or charges against a defendant already "held to answer" for another crime.

Under CrR 3.3(h), "[a] charge not brought to trial within the time limit determined under this rule shall be dismissed with prejudice."

Young was arrested and charged with assault-domestic violence and harassment-domestic violence on December 8, 2021, under superior court number 21-1-03000-32. Two days later, the court issued a pretrial no-contact order. On February 28, 2022, the court dismissed the assault and harassment charges on the State's motion. The following month, on March 2, 2022, the State charged Young with five counts of witness tampering, five counts of violating a no-contact order, and one count of attempted no-contact order violation, under superior court number 22-1-00500-32.

Young's argument fails because the acts of assault and harassment were a separate cause number based on different charges not before us on appeal. *See* Notice of Appeal. The speedy trial period for these charges is separate from the speedy trial period for the subsequent charges filed under a different cause number and based on subsequent

conduct. Young fails to demonstrate that the speedy trial period on these charges expired before his trial.

We affirm Young's conviction and sentence but remand with instructions for the court to strike the VPA from Young's judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Cooney, J.