Filed
Washington State
Court of Appeals
Division Two

June 17, 2025

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | | |
|---|---|---|
| ADAM LOUIS STATEN, | | No.  59902-3-II |
| Appellant, | | |
| v. | | |
| JESSICA LEE BARTUNEK, | | UNPUBLISHED OPINION |
| Respondent. | | |

LEE, J. — Adam L. Staten appeals a restraining order and temporary family law order restricting his contact and visitation with his child.  Staten raises several errors related to the superior court's orders and argues the superior court was biased.  The record designated on appeal is insufficient to review the majority of Staten's assigned errors, and Staten fails to establish that the superior court was biased.  Accordingly, we affirm.

### FACTS[1]

On July 10, 2024, the superior court held a hearing regarding a restraining order between Staten and Jessica Bartunek, the mother of Staten's child.  At the beginning of the hearing, Staten stated that he did not have the paperwork that was filed and the superior court responded that someone "could probably get something emailed to you so you can understand and acknowledge

---

[1] The record in this case is limited to only the orders being appealed and the transcript of the hearing at which the orders were issued.  It is the appellant's burden to perfect the record and Staten failed to designate any other clerk's papers or verbatim reports of proceedings.  *See* RAP 9.2(b), 9.6(a).

what's going on." Verbatim Rep. of Proc. (VRP) at 4-5. Both parties were sworn in for the hearing.

The superior court then continued, stating that a restraining order had been granted on July 1 based on several allegations, including that Staten had stopped exercising any parenting time under the current parenting plan. The superior court summarized some of the events leading up to the restraining order including Staten failing to pick the child up from school and moving to Texas without providing any notice. When Staten denied moving to Texas, the superior court declared that Staten was not credible.

Staten explained that he had not been picking the child up from school because of his work schedule. Although the superior court stated that the school records would undermine Staten's claim, the superior court recognized that his failure to pick up the child was not the relevant issue. Instead, the superior court stated the relevant point was that Staten had moved to Texas without notice and, as a result, was unable to exercise his parenting time under the current parenting plan.

Staten claimed that he had not failed to exercise his parenting time and had been attempting to arrange visitation with Bartunek. The superior court rejected Staten's explanation, expressing concern about visitations occurring in Texas:

> If you came here and exercised your visitation, she would have allowed it. Your visitation does not happen in Texas. That is not something this Court has ever ordered and allowed.
> So you're just working outside and doing whatever the heck you want. And that's not going to work here, buddy. So I don't know what else to tell you.
> And you're sitting here, and you're telling me things that aren't true. You moved to Texas. Your daughter lives here.

VRP at 10. The superior court also noted that there was not a long-distance parenting plan in place and that the current parenting plan was not applicable to his situation.

2

Staten argued that the superior court had previously told the parties that they should negotiate the terms of the parenting plan between themselves and that was what he was attempting to do. When Staten expressed frustration with Bartunek filing for a restraining order despite apparently being aware that Staten had moved, the superior court responded:

> The reason why she's doing this now is because you said you were going to take the child out of the state. That's why she's doing this now.
>     You have no right to take the child out of the state. This Court hasn't granted you that right. That's not something you get to negotiate with.

VRP at 11.

Staten continued arguing with the superior court about his visitation, and the superior court informed Staten that she had already granted a restraining order suspending his visitation and prohibiting him from removing the child from the state. The superior court further stated that the restraining order had been granted because Bartunek had a reasonable fear that Staten was going to remove the child from the state. However, the superior court told Staten that his visitation could be reestablished if he properly filed a modification to create a long-distance parenting plan addressing his move to Texas.

Staten then argued he had not done anything improper because the parenting plan only prohibited him from relocating the child; it did not prohibit him from moving to Texas and exercising his visitation. Staten then asked if Bartunek was prohibited from taking the child to Oregon and why Bartunek had been able to move without providing notice to the court. Staten accused the superior court of being biased because Bartunek was doing the same things that the superior court was prohibiting Staten from doing. The superior court informed Staten that she had made her decision, the restraining order was in place, and she was done discussing it. Then the following exchange took place:

3

THE COURT: Yes. Okay. We're done talking about this right now.

MR. STATEN: Exactly. Biased views.

THE COURT: Yeah, I'm biased. So I'm not biased, sir. You have violated the Court's ruling.

MR. STATEN: No. No, you said it, yourself. You said it, yourself. That's biased when you say that she can do all this stuff. She can move without changing her address to the Court, that she can take the child out of the state, but I cannot do none of this.

THE COURT: Okay.

MR. STATEN: And we have 50-50 custody.

THE COURT: That's right. That's why you—

MR. STATEN: And then you just said that you were biased.

THE COURT: That's—I was just copying what you said, sir. Nobody else in this courtroom thinks I was saying I was biased. So if you can get the—

MR. STATEN: I can't, right now. I really can't.

THE COURT: Yeah. I can't, either. Your disrespect to this Court, and every single time you've been in here, you've been disrespectful to this Court.

VRP at 18-19. The superior court then ordered that Staten could not have visitation unless it occurred in Washington and was supervised. The superior court asked Bartunek to fill out the restraining order and informed the parties she would sign the order off the docket. Finally, the superior court noted the parties would be back in August to deal with additional issues that Bartunek had raised in other filings and ended the hearing.

A written restraining order was signed and filed the next day. The restraining order noted three protected parties: Bartunek; A.G.B., the parties' child; and a second child, A.L.B. The order found that Staten had actual notice of the hearing and had been served by law enforcement at his last known address. The terms of the order prohibited Staten from disturbing the peace of the

protected persons or hurting or threatening the protected persons. The order also required Staten to stay 1,000 feet away from the protected persons.

The superior court also entered a temporary family law order. The temporary family law order suspended Staten's residential time and decision-making until a fact-finding hearing was held. The temporary family law order also included the following provision regarding visitation:

> [Staten]'s visitation shall occur in Washington State and be Supervised, those costs shall be paid for by [Staten] and will need to be scheduled no less than two weeks in advance and proof of payment and confirmation no less than 72 hours in advance of the Supervised visit. Prior introduction to the Supervised Visitation person must occur two weeks prior to the first visit for the Child to feel safe, secure and assure it is in the Childs [sic] Best Interest.

Clerk's Papers at 13.

Staten appeals.

## ANALYSIS

Staten appeals the superior court's orders arguing (1) the superior court erred by entering the orders when he was not properly served and had no notice, (2) the superior court improperly relied on failure to exercise parenting time as the grounds for the restraining order, (3) the superior court's order improperly includes a child not related to Staten, and (4) the superior court erred by restricting Staten's parenting time without making findings under RCW 26.09.191. Staten also argues that the superior court violated his right to a fair hearing.

A. FAILURE TO DESIGNATE THE RECORD

Staten raises numerous challenges to the superior court's orders. However, Staten has failed to designate a record sufficient for us to review his claims. Accordingly, we do not address the majority of Staten's arguments.

"The appellant has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue." *In re Marriage of Haugh*, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990); RAP 9.2(b). If the appellant fails to provide us with a record sufficient for review, we cannot reach the merits of the appellant's arguments. *See Olmstead v. Mulder*, 72 Wn. App. 169, 183, 863 P.2d 1355 (1993) ("We cannot reach the merits of [Appellant's] arguments because he has failed to provide us with a sufficient trial record."), *review denied*, 123 Wn.2d 1025 (1994).

First, Staten argues that he had no notice regarding the request for the restraining order. Here, the record designated by Staten is insufficient for us to review the superior court's finding that Staten had actual notice of the hearing because there is nothing in the record related to what service was made or attempted. Accordingly, we cannot review the merits of Staten's argument.

Second, Staten argues that the superior court erred by including A.L.B. in the restraining order. Here, the record does not contain any facts that allow this court to determine who A.L.B. is or why that child was included in the order. Accordingly, the record is insufficient for us to review this argument.

Third, Staten argues that there were no grounds for issuing the restraining order because it was based on his failure to exercise his parenting time. As an initial matter, although there was discussion regarding Staten's failure to pick up the child from school, the superior court repeatedly referenced Staten's unauthorized move to Texas and his threats to remove the child from the state. The record designated on appeal does not contain the request for the restraining order or any supporting information and, therefore, the record is insufficient to allow us to review the reasons for the superior court granting the restraining order.

Fourth, Staten argues that the superior court erred by restricting his visitation because Bartunek failed to prove any limiting factors under RCW 26.09.191. As noted above, none of the

facts or allegations supporting the request for a restraining order are contained in the record on appeal. Therefore, the record is insufficient for this court to review the factual basis for the superior court's decision to restrict Staten's visitation.[2]

B.    FAIR HEARING

Staten also assigns error to the superior court's failure to recuse herself after admitting her bias against him. Staten further claims that the superior court violated his right to a fair hearing by making derogatory remarks (specifically, calling him "'buddy'") and allowing Bartunek to do the specific things that he was being prohibited from doing. Br. of Appellant at 7. We disagree.

Under the appearance of fairness doctrine, a judge must be both impartial and appear impartial. *State v. Gamble*, 168 Wn.2d 161, 187, 225 P.3d 973 (2010). "The party asserting a violation of the appearance of fairness must show a judge's actual or potential bias." *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). To overcome the presumption that a superior court judge acts without bias or prejudice, the party raising the challenge must identify specific facts raising at least a suspicion of bias or partiality, such as a personal or pecuniary interest in the outcome of the proceedings. *Tacoma S. Hosp., LLC v. Nat'l Gen. Ins. Co.*, 19 Wn. App. 2d 210, 218, 494 P.3d 450 (2021), *review denied*, 198 Wn.2d 1041 (2022); *Tatham v. Rogers*, 170 Wn. App. 76, 96, 283 P.3d 583 (2012) ("'[a] party asserting a violation of the [appearance of fairness] doctrine must produce sufficient evidence demonstrating bias, such as personal or pecuniary interest on the part of the decision maker; mere speculation is not enough.'" (alterations in original) (quoting *In re Pers. Restraint of Haynes*, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000)).

---

[2] Further, RCW 26.09.191 applies to restrictions in temporary or permanent parenting plans. The statute makes no reference to restraining orders or temporary family law orders.

Initially, we note that it is clear from reviewing the record as a whole that the superior court was not admitting to personal bias, but was an unartful response to Staten's accusations and comments. Similarly, the superior court's use of "buddy" when stating, "And that's not going to work here, buddy," may be an unprofessional expression of frustration, but it does not show that the superior court was actually or potentially biased. VRP at 10.

Finally, the record belies Staten's assertion that the superior court was allowing Bartunek to do the same things that the superior court was prohibiting Staten from doing. Based on the limited record before us, Staten had moved out of state to Texas and was attempting to exercise his parenting time without a court order or parenting plan accounting for long-distance parenting or visitation. In contrast, Staten alleges that Bartunek was allowed take short trips out of state or "move without changing her address to the Court."[3] VRP at 18. There is a clear distinction between what Bartunek is allegedly permitted to do and what the superior court prohibited Staten from doing. Accordingly, the superior court's decision not to limit or restrain Batunek's actions is not evidence of bias.

We affirm.

---

[3] There is nothing in the record to show that Bartunek's alleged move violated any provision of the Child Relocation Act, RCW 26.09.405-560. For example, RCW 26.09.430 requires that notice of a relocation be provided to persons entitled to residential time or visitation with the child, not to the court. And RCW 26.09.450 allows actual notice in place of notice under the statute and prohibits objections to a relocation if the relocation is within the same school district.

No. 59902-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, P.J.

We concur:

_____
Price, J.

_____
Che, J.