# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>JENIFER MARKS HILLEGAS,<br><br>    Appellant,<br><br>  and<br><br>DAVID M. HILLEGAS,<br><br>    Respondent. | DIVISION ONE<br><br>No. 84449-1-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Jenifer Hillegas appeals from several orders entered by the superior court following a bench trial on her marital dissolution action against her former spouse. On appeal, Jenifer[1] asserts that she was deprived of her right to a fair trial because the judge presiding over the parties' bench trial did not recuse herself from the case. Jenifer also asserts that the trial court abused its discretion in denying her request to suspend the time limits set for trial by the trial judge prior to the trial's commencement. Jenifer's request was presented to the trial court for the first time on the second day of trial. Jenifer further asserts that the trial court abused its discretion by entering a permanent parenting plan providing her and David Hillegas equal residential time with their children, by denying her petition for relocation with those children, and by restraining her and David from having contact with one another other than as set forth in the permanent parenting plan. Finding no error, we affirm.

---

[1] We use the parties' first names for clarity. No disrespect is intended.

I

In March 2008, David and Jenifer were wed.  Between 2010 and 2016, they had three children—a son and two daughters.  In October 2018, they separated.  At that time, their children's ages were 2, 5, and 7.

One and a half years later, in March 2020, Jenifer filed a petition for dissolution of her marriage to David in King County Superior Court.[2]  The case was assigned to the Honorable Aimee Sutton, with an anticipated trial date in February 2021.

By July 2020, the parties entered into a CR 2A agreement regarding their marital property and debt issues and reserved for later determination the remaining issues of child support and a parenting plan.

In January 2021, one month before trial, Jenifer requested a domestic violence protection order on her behalf against David.  She requested, among else, that she be granted the care, custody, and control of their children.

In early February 2021, the parties agreed to a temporary parenting plan providing 55 percent of the residential time with the children to Jenifer and the remaining 45 percent of that time to David.  One week thereafter, the trial court granted, over David's partial objection, a request by Jenifer to continue the parties' February trial commencement date to May.

On March 1, a superior court commissioner granted in part Jenifer's request for a domestic violence protection order.  The commissioner's order

---

[2] In filing her dissolution petition, Jenifer did not request a protection order or a restraining order.

protected Jenifer from David and granted her the temporary care, custody, and control of their children, but it also authorized David to have residential time with the children as set forth in their temporary parenting plan and reserved for the dissolution action the question of whether treatment or counseling requirements should be imposed on David. The duration of the protection order was one year.

Two weeks later, the trial judge in the dissolution action granted, again over David's partial objection, a request by Jenifer to continue the parties' trial commencement date—her second such request. The scheduled trial date was now in August 2021. The trial judge also entered an order transferring the dissolution action to the Family Court Department for a Family Court Services investigation.

In May, Angela Battisti, LICSW, a family conciliation and evaluation specialist with Family Court Services, was assigned to conduct a parenting plan evaluation of Jenifer and David. This evaluation included investigating Jenifer's allegations of domestic violence and chemical dependency on the part of David and investigating David's corresponding allegations against Jenifer.

In July, Judge Sutton entered a pretrial conference order for a trial set to commence at the end of August. As notable here, the order set forth that the "estimated length of trial is 3 days." Neither party objected to the court's estimated duration of the parties' trial. The parties later submitted a joint motion to continue their trial date to December 13, 2021, which the court granted. This was the third trial continuance.

3

In August, Ms. Battisti submitted her parenting plan evaluation. In a lengthy and detailed evaluation, she set forth summaries of her interviews with David and Jenifer, their children, and numerous other individual references and of text messages exchanged between David and Jenifer—many of which were demeaning and sometimes threatening on the part of both parties—over the course of their marriage and subsequent separation. In the evaluation's analysis section, Ms. Battisti summarized her findings on David's and Jenifer's allegations of domestic violence against one another and warned each of them that "ongoing behavior of this nature could be a basis for an RCW 26.09.191[3] restriction against him or her in the final parenting plan."

Ms. Battisti also summarized her findings regarding David's and Jenifer's allegations against one another regarding substance abuse problems, and Ms. Battisti determined that "[t]he information available does not support an RCW 26.09.191 restriction in the Final Parenting Plan for either parent due to substance use." Ms. Battisti therefore concluded that "there are no RCW 26.09.191 restrictions for either parent." (Bold face omitted.)

Lastly, Ms. Battisti summarized the parties' residential schedule history and recommended equal residential time between the parents:

> Given the children's relationships with both parents, the prior agreements of the parties, the close distance between the parties' homes, the flexible work schedules of both parents, and the absence of RCW 26.09.191 restrictions for either parent, the mother and the father should have a shared residential schedule in

---

[3] RCW 26.09.191, discussed infra, regards a trial court's authority to impose certain limitations on parenting plans arising from, as pertinent here, a parent's domestic violence or substance abuse.

which each has an equal amount of time with the children and they should share decision making ability.

Two weeks later, in early September, Jenifer filed a notice for relocation with the children. The notice indicated that she was intending to relocate to Arizona with both the parties' children and her fiancé on December 15, the last day of the upcoming three-day trial, which was set to commence on December 13.

In late September, the dissolution action was transferred from Judge Sutton to Pro Tem Judge Camille Schaefer. A little over one month later, in early November 2021, the case was transferred again, from Pro Tem Judge Schaefer to the Honorable Hilary Madsen.

Shortly thereafter, David filed a motion for a temporary order preventing Jenifer's relocation of the children. In response to that motion—and in support of her request for relocation—Jenifer acknowledged that "[w]e are scheduled for trial on December 13" and represented to the court as follows:

> Discovery has been completed. I am ready for trial. My witnesses are ready for trial. Both parties are represented by counsel, who are also presumably ready for trial. It is in the children's best interests to resolve the relocation issue as soon as possible so that we have finality and certainty.

In early November, Judge Madsen entered a pretrial conference order for a three-day trial to begin on December 13, giving each party five hours to present their case and allowing five hours for the parties to examine Ms. Battisti. Neither party objected to Judge Madsen's pretrial conference order.

In mid-November, Judge Madsen granted David's motion for a temporary order prohibiting Jenifer from relocating with the children until the court had

5

issued its final orders.  Judge Madsen also entered a trial management order establishing a start date for the trial on December 13, again setting forth an estimated duration of three days.  The court's order indicated to the parties: "If you have any reason to believe the trial cannot be completed within the time allocated above, then you **MUST** contact the Court . . . immediately."  Neither party contacted the court to raise a concern with the established duration of the upcoming trial or to object on any basis to the trial management order.

In late November, Jenifer's legal counsel filed a withdrawal of counsel, with such notice effective immediately.  The trial court shortly thereafter found that Jenifer, a licensed attorney with a history of family law practice, appeared ready to represent herself at trial.

At the end of November, Jenifer personally sent the following e-mail message to Judge Madsen's bailiff:

> As we all are aware, Judge Madsen just came on our case a month or so ago.
>
> During the hearing on Friday I recognized Judge Madsens [sic] voice.  It has come to my attention that we went to Seattle University together, and in fact we were in the same section our first year, Section A.  In Law School my name was Jenifer Marks.
>
> Please let me know if Judge Madsen would like to recuse herself, or if I should file an affidavit of prejudice so that it is noted in the file?

Judge Madsen's bailiff responded as follows: "Judge Madsen will not recuse, and you are free to bring whichever motion practice you believe is necessary."  Jenifer did not subsequently file a motion or notice on the record seeking Judge Madsen's recusal.

6

In early December, Judge Madsen entered the same trial management order setting a start date for the trial on December 13, again setting forth an estimated duration of three days, and again advising the parties to alert the court with any concern as to the trial's duration. Neither party did so.

On December 8, Jenifer sent another e-mail to Judge Madsen's bailiff, stating, "I am really uncomfortable doing this case in front of Hillary [sic] Madsen, as we were law school classmates, she swore during her ruling, and this case is really emotional to me as it involves [a] [domestic violence protection order]." Jennifer also requested assistance with continuing the trial date. The bailiff informed her that "I cannot offer legal advice per the confines of my duties." Jenifer again did not file a motion or notice on the record seeking Judge Madsen's recusal.

On December 9, Jenifer filed a motion to continue the December 13 trial start date, her third such request. The court found that her motion "was not properly noted and may not have been properly served."

On December 13, on the morning that trial was to commence, Jenifer's new legal counsel entered a limited notice of appearance and requested to continue the trial date to late January 2022. Judge Madsen, over David's objection, entered a detailed order granting Jenifer's request and continuing the trial start date to late February 2022, the fourth such request by Jenifer and the fourth continuance of the trial in this matter.

Judge Madsen's order also noted that "[t]he email inbox of the undersigned judge's bailiff is not the court record, nor an appropriate venue

7

through which to make argument or affirmative requests for relief.  The parties shall limit their use of Court email to coordinate logistics for hearings or as specifically instructed by the Court."  Judge Madsen's order further noted that no motion for disqualification of the assigned trial judge had been filed with the court and that Jenifer's "argument that disqualification should be handled 'discretely' does not comport with [David's] right to notice and opportunity to be heard or *any* court rule."

In early February, the trial court entered another pretrial conference order for the upcoming trial.  Four days later, the court entered a trial management order setting the late February start date for trial, again with an estimated duration of three days.  The order reiterated to the parties that, "[i]f you have any reason to believe the trial cannot be completed within the time allocated above, then you **MUST** contact the Court . . . immediately."  Again, neither party objected to the estimated trial duration.

In late February, on the Friday before trial was set to begin on the following Monday, the parties stipulated to a short continuance of the trial until late March due to the unforeseen illness of Jenifer's counsel.  Judge Madsen granted this request.  This was the fifth—and final—trial continuance in this matter.

In early March, Jenifer's one-year domestic violence protection order against David expired.  Jenifer did not seek to renew the order prior to its expiration.

On March 28, in a pretrial colloquy, the trial court reviewed in detail the manner in which the three-day trial was to proceed and asked the parties whether they had any questions. Neither party objected to the duration of the trial.

Thereafter, a three-day bench trial commenced. Throughout the resulting trial, numerous exhibits were admitted and both parties had an opportunity to examine Ms. Battisti regarding her parenting plan evaluation. Both parties presented their cases in chief which included their own testimony as witnesses and they each had the opportunity to examine and cross-examine one another.[4]

On the morning of the second day of trial, March 29, Jenifer's counsel orally requested to suspend the time limits set for trial. Judge Madsen denied that request.

On the third day of trial, after both parties had rested, Judge Madsen indicated that she would send her draft findings of fact and conclusions of law to the parties for subsequent drafting of—and providing feedback on—the court's proposed final orders.

On May 3, Judge Madsen sent the parties her draft final orders and instructed David to (1) prepare new proposed orders based on the court's draft findings and conclusions, (2) send the proposed orders to Jenifer to provide any feedback, and (3) e-mail a copy of the proposed orders with Jenifer's feedback to the trial court. Judge Madsen provided the parties the opportunity to request oral

---

[4] Around this time, Jenifer requested that a new protection order be entered against David. The trial court later denied Jenifer's request.

argument for the presentation of final orders on the record. Jenifer requested oral argument, which Judge Madsen granted. A hearing was set for early June and David was instructed to send the court an e-mail containing a copy of the proposed orders, including Jenifer's feedback on those orders.

In early June, a hearing commenced on the proposed final orders in which both parties' attorneys actively participated.

In mid-June, Judge Madsen entered several final orders, including, as pertinent here, an order setting forth extensive findings of fact and conclusions of law about the Hillegas's marriage, a permanent parenting plan granting each party equal residential time with the children, a ruling denying Jenifer's request for relocation with the children, and a mutual restraining order against both parties.[5]

Thereafter, in July and August, Jenifer filed successive motions to modify certain aspects of the court's orders, which Judge Madsen granted in part.

Jenifer now appeals.

II

Jenifer first asserts that Judge Madsen erred by not recusing herself from the parties' martial dissolution action. We disagree.

A

"A judge is presumed to perform his [or her] functions regularly and properly, without bias or prejudice." State v. Leon, 133 Wn. App. 810, 813, 138

---

[5] At the time that the trial court issued its orders, the parties' children were 5, 8, and 11 years old. The trial court also issued a decree of dissolution, a child support order, and child support worksheets, which are not at issue on appeal.

P.3d 159 (2006) (citing <u>Jones v. Halvorson-Berg</u>, 69 Wn. App. 117, 127, 847

P.2d 945 (1993)).  We recognized 50 years ago that "'[i]t is the duty of a

judge . . . to exercise the judicial functions duly conferred on him by law, and he

has no right to disqualify himself in the absence of a valid reason.'"  <u>Williams &</u>

<u>Mauseth Ins. Brokers, Inc. v. Chapple</u>, 11 Wn. App. 623, 627, 524 P.2d 431

(1974) (alterations in original) (quoting 48 C.J.S., Judges § 93(a) at 1080 (1947)).

A party may promote the exit of an assigned judge from the party's case in

reliance on statutory or constitutional grounds.  The statutory basis for judicial

disqualification is a limited basis for seeking judicial recusal.  The applicable

statutes read as follows:

> **4.12.040  Disqualification of judge . . .** (1) No judge of a
> superior court of the state of Washington shall sit to hear or try any
> action or proceeding if that judge has been disqualified pursuant to
> RCW 4.12.050. . . .
>
> **4.12.050  Notice of disqualification.**  (1) Any party to or
> any attorney appearing in any action or proceeding in a superior
> court may disqualify a judge from hearing the matter, subject to
> these limitations:
>         (a) *Notice of disqualification must be filed and called to the*
> *attention of the judge* before the judge has made any discretionary
> ruling in the case.[6]

(Emphasis added.)  Therefore, a party must file a notice of disqualification and

call such filing to the attention of the judge sought to be disqualified in order for

the party's invocation of this statutory right to be effective.

The other basis for promoting the exit of an assigned judge from a case is

grounded in the due process clause of the state and federal constitutions and

---

[6] The filing identified therein as a "[n]otice of disqualification" has previously been
referenced as a "motion for a change of judge" or an "affidavit of prejudice."

protects an individual's right to a fair trial, which includes the right to have one's case presided over by a judge free from actual or potential bias. In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955) (quoting Offutt v. United States, 348 U.S. 11, 14, 75 S. Ct. 11, 99 L. Ed. 11 (1954); Tumey v. State of Ohio, 273 U.S. 510, 532, 47 S. Ct. 437, 71 L. Ed. 749 (1927)).[7] However, "[e]vidence of a judge's actual or potential bias is required before the appearance of fairness doctrine will be applied." State v. Dominguez, 81 Wn. App. 325, 328-29, 914 P.2d 141 (1996) (citing State v. Post, 118 Wn.2d 596, 618-19 & n.9, 826 P.2d 172 (1992); State v. Carter, 77 Wn. App. 8, 11-12, 888 P.2d 1230 (1995); State v. Bilal, 77 Wn. App. 720, 722, 893 P.2d 674 (1995)). We have called a motion invoking such a claim and providing such evidence a "motion to recuse." See, e.g., In re Pers. Restraint Petition of Swenson, 158 Wn. App. 812, 819, 244 P.3d 959 (2010) (citing Dominguez, 81 Wn. App. at 327-29).

Finally, several general principles of appellate review apply to this matter. We "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). Failure to raise such a claim before the trial court waives the claim on appeal. In addition, "[u]nchallenged findings of fact are verities on appeal and unchallenged conclusions of law become the law of the case." In re

---

[7] This principle is also set forth in the Washington State Code of Judicial Conduct Rule 2.11(a): "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Washington State Code of Judicial Conduct (CJC), Rule 2.11(A), *available at* https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Code%20of%20Judicial%20Conduct%20Task%20Force%20Committe/CodeOfJudicialConduct.pdf. Impartiality is defined therein as the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." CJC, supra, Terminology. In addition to not filing a motion or notice relying on statutory or constitutional grounds for recusal of Judge Madsen, discussed infra, Jenifer also did not file a motion or notice in reliance on the Code of Judicial Conduct or provide any evidence, analysis, or argument in support thereof.

Marriage of Laidlaw, 2 Wn. App. 2d 381, 386, 409 P.3d 1184 (2018) (citing Rush v. Blackburn, 190 Wn. App. 945, 956, 361 P.3d 217 (2015)). Finally, the appellant has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue raised on appeal. In re Marriage of Haugh, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990); RAP 9.2, 9.6.

B

As set forth above, shortly before trial was set to begin and after trial had previously been continued for 10 months, Jenifer sent a pair of e-mails to Judge Madsen's bailiff indicating that she was uncomfortable with Judge Madsen, that she was in the same entering class in law school as Judge Madsen, and that Judge Madsen "swore during her ruling." Jenifer also stated, "[p]lease let me know if Judge Madsen would like to recuse herself, or if I should file an affidavit of prejudice so that it is noted in the file." Jenifer did not submit any of this information on the record, did not subsequently file a notice of disqualification, and neither she, nor her attorney at the time, called such a filing to Judge Madsen's attention. Judge Madsen, for her part, did not recuse herself.

Four and a half months later, a three-day trial commenced. Around this time, according to later-entered findings set forth in Judge Madsen's final orders,

> Petitioner's attorney suggested on the record the undersigned Court is biased against her client. Petitioner's attorney informed the undersigned Court at least twice on the record she was filing or had already filed a complaint with the Judicial Conduct Commission about the undersigned Court. . . . Petitioner was invited to bring a motion about the necessity of recusal, . . . but never brought a motion. No specific reason has been presented on the record about why the impartiality of the undersigned Court might

reasonably be questioned, and no party has requested a ruling about the Court's ability to be fair.

On appeal, Jenifer does not challenge any of the foregoing findings.

C

For several reasons, Jenifer fails to establish that Judge Madsen erred by not recusing herself. As an initial matter, it is undisputed that Jenifer neither filed a notice of disqualification pursuant to RCW 4.12.050 nor filed a motion to recuse pursuant to the due process clause. Indeed, her e-mails to Judge Madsen's bailiff were not a filing on the record before the superior court and her counsel's utterances were not characterized as a motion promoting Judge Madsen's recusal. The record thus does not support that Jenifer filed a notice of disqualification or a motion to recuse in this matter.[8]

Additionally, even if Jenifer's attorney's suggestion on the record that Judge Madsen was biased against Jenifer could plausibly be characterized as a motion to recuse, Jenifer does not provide citation to the record or a verbatim transcript of such a suggestion sufficient for us to evaluate such a proposition. The burden is on the appellant to create a record sufficient for appellate review. Haugh, 58 Wn. App. at 6.

Moreover, Jenifer does not contest the trial court's finding that "[n]o specific reason has been presented on the record about why the impartiality of the undersigned Court might reasonably be questioned, and no party has requested a ruling about the Court's ability to be fair." Therefore, it is undisputed

---

[8] Indeed, Jenifer does not challenge on appeal Judge Madsen's ruling that "[t]he email inbox of the undersigned judge's bailiff is not the court record, nor an appropriate venue through which to make argument or affirmative requests for relief. The parties shall limit their use of Court email to coordinate logistics for hearings or as specifically instructed by the Court."

14

that Jenifer failed to alert Judge Madsen to the basis on which Jenifer sought Judge Madsen's recusal from the dissolution action. Given that Jenifer neither filed a notice, filed a motion, or alerted the trial court as to the legal basis for her request for Judge Madsen's recusal, Jenifer waived her right to challenge this issue on appeal.[9]

Furthermore, as recognized by Judge Madsen and as set forth above, trial judges do not have a right to disqualify themselves absent a valid reason to do so. Williams & Mauseth,11 Wn. App. at 627 (quoting 48 C.J.S., supra, § 93(a)). This follows from our Supreme Court's guidance that "'[a]bsent supportable reasons the parties should not be subjected to the expense and strain of another trial before another judge.'" Williams & Mauseth, 11 Wn. App. at 631 (quoting Bjork v. Bjork, 71 Wn.2d 510, 511, 429 P.2d 234 (1967)). Therefore, fairness to both parties weighs in favor of trial judges not recusing themselves in the absence of a valid reason for disqualification. Here, after the assignment of three different trial judges, five trial continuances, and in the absence of a valid reason for Judge Madsen to recuse, fairness to both parties—including David and the parties' children—weighed strongly in favor of Judge Madsen not recusing herself and seeing the parties' dissolution action to its conclusion. Therefore, in these ways as well, Jenifer's claim fails.

---

[9] Although a party may raise a manifest error affecting a constitutional right for the first time on appeal, RAP 2.5(a)(3), as discussed herein, Jenifer has failed to provide a record sufficient to support an allegation of manifest error.

D

We also note that the record reflects that Jenifer's attorney brought to Judge Madsen's attention during a proceeding before the court that Jenifer had allegedly personally filed at least one complaint against Judge Madsen with the Washington State Judicial Conduct Commission. The filing of such a complaint is not a valid reason to request a trial judge's recusal and bringing such a complaint to the judge's attention was improper.

According to article IV, section 31, amendment 77, of the Washington State Constitution, a Judicial Conduct Commission proceeding investigating a complaint against a judge or justice is to be confidential, unless waived by the judge or justice in question:

> Whenever the commission receives a complaint against a judge or justice, it shall first conduct proceedings for the purpose of determining whether sufficient reason exists for conducting a hearing or hearings to deal with the accusations. *These initial proceedings shall be confidential*, unless confidentiality is waived by the judge or justice, but all subsequent hearings conducted by the commission shall be open to members of the public.

WASH. CONST. amend. 77 (emphasis added).

In implementing this constitutional amendment, our legislature set forth that "[t]he commission shall provide by rule for *confidentiality of its investigations and initial proceedings* in accordance with Article IV, section 31 of the state Constitution. *Any person violating a rule on confidentiality* is subject to a proceeding for contempt in superior court." RCW 2.64.113 (emphasis added).

The commission, for its part, adopted Rule 11, which provides, in pertinent part, that "*court personnel shall keep the fact that a complaint has been made . . .*

*confidential* during the investigation and initial proceeding." Commission on Judicial Conduct Rules of Procedure (CJCRP), Terminology, Rule 11(a)(2) (emphasis added). The commission defined "court personnel" to include "attorneys." CJCRP Terminology. Rule 11 further provides that "[n]o person shall disclose . . . papers filed with the commission," and "[a]ny person violating Rule 11 may be subject to a proceeding for contempt in superior court." Rule 11(d).[10]

Here, Jenifer's counsel disclosed to Judge Madsen that Jenifer had filed at least one complaint against Judge Madsen with the Commission on Judicial Conduct. As recognized by Judge Madsen, and as unchallenged on appeal, Jenifer's "complaint to the Judicial Conduct Commission (if any) about the undersigned Court would be unknown to the Court but for disclosure by [her] attorney."

---

[10] The commission explained its reasoning for such confidentiality as follows:
*The integrity of investigations would be harmed, the privacy interests of individuals, and the independence of the judiciary would be adversely affected without providing for limited restrictions of information learned or provided to the Commission during the investigation.* Confidentiality is critical for the integrity of the Commission investigations, and often influences whether a person who works directly with a judge is willing to file a complaint or disclose misconduct in an investigation. Prohibiting disclosure that a complaint has been filed, or that a person has been interviewed, protects those persons from questioning by their supervising judge, or by others. *The confidentiality required during the investigation of a complaint also protects the independence of the judiciary by preventing unfounded complaints from being used to threaten or distract judges.* After considering alternate ways of providing this necessary protection, the Commission has concluded that the temporary restrictions on public disclosure in this rule are the narrowest restrictions that will provide the confidentiality needed for persons who disclose misconduct or file complaints and for the judges under investigation. *The reason lawyers are covered by this rule is that they are officers of the court and are especially charged with maintaining the integrity and independence of the judiciary.*
CJCRP Rule 11, cmt. to Rule 11 (emphasis added).

The foregoing disclosure by Jenifer's counsel to Judge Madsen was improper and contemptuous. Judge Madsen rejected the notion that the filing of a complaint against her by Jenifer provided a valid basis for Jenifer to seek Judge Madsen's recusal by concluding that, "[t]his looks like invited error." We disagree. Invited error presupposes judicial error. Here, there is no judicial error. Rather, the attorney's disclosure of the filing of the complaint was an untoward attempt to improperly manufacture a basis for Judge Madsen's recusal from the case.

Our decision in State v. Bilal, 77 Wn. App. 720, is instructive. In that matter, a criminal defendant physically assaulted the judge presiding over his criminal trial immediately after the jury announced its guilty verdict. The defendant then requested the recusal of the judge from the ensuing sentencing hearing. We held that recusal was not warranted, noting that "all jurisdictions agree that a defendant should not benefit from his or her own misbehavior and that recusal lies within the sound discretion of the trial court." Bilal, 77 Wn. App. at 722. The same underlying reasoning applies to misbehavior by parties—and their attorneys—in a civil case.

Given that Jenifer's counsel's disclosure was improper and contemptuous, it follows that Jenifer should not benefit from her counsel's misbehavior.[11]

---

[11] Moreover, this was an approach that was unlikely at its onset to succeed. As stated by a federal circuit court a half-century ago:

> A judge lives in an atmosphere of strife, in which, by nature and experience, he is expected to be a man of "fortitude." See Pennekamp v. State of Florida, 328 U.S. 331, 349, 66 S. Ct. 1029, 90 L. Ed. 1295 [(1946)]. He must continually rule against one party or another. No judge can be so sanguine as to believe that he is never the object of disapproval and criticism directed to something more personal than his abstract judicial actions. If such disapproval is brought openly to his attention he does not automatically change from benign to biased. It is

Accordingly, for this reason as well, Judge Madsen did not err by not recusing herself.[12]

E

Furthermore, the record made available to us reflects that Judge Madsen was neither actually or potentially biased against Jenifer in this case. Indeed, contrary to Jenifer's assertions, the record is replete with indicia of Judge Madsen exercising her discretion to Jenifer's—and her legal counsel's—benefit and to David's detriment. Among else, Judge Madsen repeatedly granted Jenifer's requests for continuances of the trial start date over David's objections—including one request made on the very day that trial was to commence. Furthermore, after final orders were entered, Jenifer filed multiple motions seeking reconsideration and modification of Judge Madsen's orders which Judge Madsen granted in part and modified in response to Jenifer's requests.

Thus, for the foregoing reasons, Judge Madsen did not err by not recusing herself from the matter herein.[13] Jenifer utterly fails to establish an entitlement to appellate relief.

---

neither practical nor reasonable to liken a judge to an ostrich, unconcerned so long as his head is in the sand.

In re Union Leader Corp., 292 F.2d 381, 389 (1st Cir. 1961).

[12] We emphasize that the impropriety in question concerns not Jenifer's filing of a complaint against the judge in this matter but, rather, Jenifer's counsel's disclosure to the trial judge of this fact.

[13] Jenifer also relies on certain rulings by Judge Madsen that, according to Jenifer, constituted bias that deprived her of her constitutional right to a fair trial. However, judicial rulings "[a]lmost invariably . . . are proper grounds for appeal, not for recusal." Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994), see also In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004) (citing Liteky, 510 U.S. at 555).

III

Jenifer next asserts that the trial court deprived her of her constitutional right to a fair trial by denying her request, made on the second day of trial, to suspend the time limits previously and repeatedly established for trial.  Jenifer is incorrect.

Our Supreme Court has stated that

> [t]he trial court is generally in the best position to perceive and structure its own proceedings.  Accordingly, a trial court has broad discretion to make a variety of trial management decisions, ranging from "the mode and order of interrogating witnesses and presenting evidence," [ER 611(a),] to the admissibility of evidence, [State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997),] to provisions for the order and security of the courtroom.  [State v. Jaime, 168 Wn.2d 857, 865, 233 P.3d 554 (2010); State v. Hartzog, 96 Wn.2d 383, 401, 635 P.2d 694 (1981).]  In order to effectuate the trial court's discretion, we grant the trial court broad discretion: even if we disagree with the trial court, we will not reverse its decision unless that decision is "manifestly unreasonable or based on untenable grounds or untenable reasons."  In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

State v. Dye, 178 Wn.2d 541, 547-48, 309 P.3d 1192 (2013) (footnotes omitted); see also Pierce v. Bill & Melinda Gates Found., 15 Wn. App. 2d 419, 444, 475 P.3d 1011 (2020) ("'Trial judges have wide discretion to manage their courtrooms and conduct trials fairly, expeditiously, and impartially. . . .  We, therefore, review a trial judge's courtroom management decisions for abuse of discretion.'" (alteration in original) (quoting In re Marriage of Zigler, 154 Wn. App. 803, 815, 226 P.3d 202 (2010))).[14]

---

[14] In addition, RCW 4.28.020 provides that, "[f]rom the time of the commencement of the action by service of summons, or by the filing of a complaint, or as otherwise provided, the court is deemed to have acquired jurisdiction and to have control of all subsequent proceedings."  We have concluded that RCW 4.28.020 provides the trial court with "jurisdiction for all purposes, including the power to control its own calendar.  The court's exercise of this power, however, is

ER 611(a) provides, in pertinent part, that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . avoid needless consumption of time." The party challenging a court's exercise of discretion has the burden of showing the facts constituting such error. Childs v. Allen, 125 Wn. App. 50, 58, 105 P.3d 411 (2004).

The trial court did not abuse its discretion in denying Jenifer's request to extend the time allotted for trial. The trial court's decision herein to limit the time allotted for trial to three days based on the issues, witnesses, and exhibits brought to the court's attention was reasonable. Moreover, based on the record before us—and as recognized by the trial court in its order on Jenifer's motion to suspend trial limits—Jenifer repeatedly received notice of the three-day duration established for trial and did not object. As set forth above, Jenifer was on notice as early as July 2021 that the estimated duration of the trial was three days. She was further notified of this duration on three occasions in November and December 2021 and the court's trial management order specifically instructed the parties that, "[i]f you have any reason to believe the trial cannot be completed within the time allocated above, then you **MUST** contact the Court . . . immediately." Jenifer did not do so. Jenifer was again notified of the three-day duration of trial in early February 2022 and was again instructed to notify the court of any issues with the duration of the trial as above. Jenifer again did not do so. Finally, on the day that trial was set to commence, the trial court reviewed

discretionary." Swan v. Landgren, 6 Wn. App. 713, 716, 495 P.2d 1044 (1972) (citing RCW 4.28.020).

21

the trial schedule with the parties and asked them whether they had any questions. Neither party objected to the trial schedule established by the court.

Furthermore, Jenifer's filings and representations to the court indicated that she was aware of—and agreed to—the three-day duration of trial. Indeed, in her response to David's motion to temporarily stay her relocation with the children, she acknowledged that the upcoming trial date was set for December 13 and indicated that she was planning on relocating with the children on December 15, which would constitute the third day of the upcoming trial. This suggests that she was aware, at least five months before trial eventually commenced, that the trial was to occur over three days.

Therefore, the record reflects that not only did the court repeatedly notify Jenifer of the three-day trial duration but also that she was aware of as much at least five months prior to the actual commencement of the trial. Moreover, as recognized by the trial court, by the time that Jenifer made her request to suspend the time limits for trial, her request was plainly untimely. Furthermore, given that the parties had been previously and repeatedly notified of the duration of trial, a reasonable judge could determine that such a request should be denied in fairness to the opposing party who had, in reliance on the court's previous and repeated notifications, made preparations for a trial of the duration set by the court. Finally, Jenifer has not provided us with cogent and specific argument or analysis in support of her contention that the trial court's management of the trial was unreasonable.[15]

_____

[15] Moreover, as found by the trial court, Jenifer has not provided any specificity as to the witnesses, evidence, or purpose of introducing any additional evidence that would have been

Given all of this, the trial court did not abuse its discretion in denying Jenifer's request to suspend the time limits established for trial. Accordingly, Jenifer does not establish an entitlement to appellate relief.

IV

Jenifer next asserts that the trial court erred by issuing a permanent parenting plan that granted the parties equal residential time with their children. Again, we disagree.

A

We review a parenting plan entered by a trial court for an abuse of discretion, which occurs when the court's decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). We accept the trial court's findings of fact as verities on appeal so long as they are supported by substantial evidence. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted. Katare, 175 Wn.2d at 35. This court defers to the trial court

presented had the trial time limits been suspended. Absent such specificity, she fails to show that the court's ruling prejudiced her. Therefore, for this reason as well, the trial court did not err in denying Jenifer's counsel's request.

We also note Jenifer's assertion that her trial counsel raised this issue before and during the trial in this matter, and that her counsel filed a motion to "eliminate the time restraints." However, Jenifer does not provide citation to the record where any such arguments or legal documents might be found. Again, the party seeking an appeal bears the burden of perfecting the record. Haugh, 58 Wn. App. at 6. Jenifer also relies on two cases, In re Marriage of Ebbighausen, 42 Wn. App. 99, 708 P.2d 1220 (1985), and Baxter v. Jones, 34 Wn. App. 1, 658 P.2d 1272 (1983), for the proposition that the trial court erred in denying her motion to suspend the trial time limits. However, there is no indication in the record that the trial court herein resolved any matters without either party being present, resolved any matters without hearing testimony from each of them regarding the issues presented for trial, or ended the trial without providing each party an opportunity to be heard. Thus, the cases she cites are unhelpful.

23

as the finder of fact to make credibility determinations and weigh evidence.  State v. Merritt, 200 Wn. App. 398, 408, 402 P.3d 862 (2017).

Moreover, when a party fails to specifically challenge a trial court's findings, such findings become verities on appeal.  In re Est. of Lint, 135 Wn.2d 518, 532-33, 957 P.2d 755 (1998); Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 407, 858 P.2d 494 (1993).  When findings of facts are verities on appeal, our review is limited to determining whether the findings support the trial court's conclusions of law and judgment.  In re Santore, 28 Wn. App. 319, 323, 623 P.2d 702 (1981).

Superior courts have original jurisdiction of "all matters . . . of divorce."  WASH. CONST. art. IV, § 6.  A trial court has broad discretion to fashion a permanent parenting plan but its discretion must be guided by the provisions of chapter 26.09 RCW.  Katare, 175 Wn.2d at 35-36.

B

Jenifer contends that the trial court erred by not imposing statutory limitations on David's residential time with their children in the parties' permanent parenting plan.  The trial court did not err in so determining.

As an initial matter, to the extent that Jenifer assigns error to that determination, she failed to assign error to any of the findings underlying the court's determination.[16]  Our rules of appellate procedure require separate

---

[16] In her appellate briefing, Jenifer assigns error as follows:
7.  The trial court erred in entering paragraph 5 of the Final Order and Findings on Objection about Moving with Children and Petition about Changing a Parenting/Custody Order (Relocation) when the trial court's Findings were contrary to the evidence or contrary to the bulk of the evidence at trial.

assignments of error to each of the trial court's contested factual findings. RAP 10.3(a)(4), (g). Because Jenifer has not challenged these findings, we treat the trial court's findings underlying the foregoing determination as verities on appeal. Lint, 135 Wn.2d at 532-33; Tapper, 122 Wn.2d at 407. When findings of facts are verities on appeal, our review is limited to determining whether the findings support the trial court's conclusions of law and judgment. Santore, 28 Wn. App. at 323.

Chapter 26.09 RCW sets forth certain provisions that a trial court must consider in determining whether to impose limitations upon a parent's involvement with children. Katare, 175 Wn.2d at 35-36. RCW 26.09.187(3), regarding the statutory criteria for establishing permanent parenting plans, sets forth that "[t]he child's residential schedule shall be consistent with RCW 26.09.191." For its part, RCW 26.09.191 provides that "[a] parent's involvement or conduct may have an adverse effect on the child's best interests," and the trial "court may preclude or limit any provisions of the parenting plan" if there exists, among else, a parent's neglect of parenting functions, a parent's long-term

---

8.      The trial court erred in its Findings attached to the Findings and Conclusions about a Marriage which were not supported by the evidence; such Findings were also used to justify rulings in the Parenting Plan and the Final Order and Findings on Objection About Moving with Children and Petition about Changing a Parenting/Custody Order.

Br. of Appellant at 4.

For reference, paragraph 5 of the aforementioned order spans 5 pages and contains 11 numbered subsections. The trial court's attached findings in support of its final orders span 20 pages and contain 73 numbered paragraphs many of which contain not only subsections but subsections within subsections, all of which are numbered.

The foregoing assignments of error in Jenifer's appellate briefing do not further identify by number the findings that, according to Jenifer, were improperly made. Given that, such assignments of error do not constitute "[a] separate assignment of error for each finding of fact a party contends was improperly made . . . with reference to the finding by number." RAP 10.3(g). Thus, because Jenifer has not specifically alerted us to those findings that, she contends, were improperly made, the trial court's findings in this matter are verities on appeal.

25

impairment arising from substance use, "[t]he abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development," and "[s]uch other factors or conduct as the court expressly finds adverse to the best interests of the child." RCW 26.09.191(3).

Here, the trial court issued extensive findings on factors of abandonment and lack of emotional ties, domestic violence, neglect, substance abuse, and criminal history. On the factor of abandonment, the trial court considered and rejected Jenifer's allegation that, because David did not use his overnight parenting time while looking for new housing, he had abandoned or lacked emotional ties to their children. The court reasoned that David's actions did not rise to the level of abandonment or lack of emotional ties to the children because the record reflected that David was excited to secure housing for himself and the children, that he had obtained housing with three bedrooms so that each child could have his or her own space, and that he had offered his own parenting time to Jenifer when it occurred on one of their children's birthdays to preserve rituals built around those occasions.

The court next provided detailed consideration of the domestic violence factor, detailing the parties' testimony regarding an incident in January 2021, a physical fight in the hallway of the family home, text message exchanges between them, and other incidents to which Jenifer and David testified. The court then found as follows:

> First, Ms. Battisti was the only parenting evaluator assigned in this case, and the sole objective witness to present recommendations regarding placement and decision-making. She testified each party

26

engaged in profanity, threatening, hostile and embarrassing comments about the other. Ms. Battisti concluded the acts described by each party do not constitute a pattern of violence such that restrictions are warranted. Ms. Battisti's testimony was credible, persuasive and convincing. Second, it is [the court's] role as the trier of fact to observe the parties to determine their credibility and to sort out conflicting evidence. The parties each lack credibility because of their tendency to downplay their own aggression towards the other; for example, [Jenifer] appeared to have a distorted view of the past at times and tended to make exaggerated statements; and [David]'s narrative appeared to leave out a lot of important details. The burden of proof has not been met about past acts of domestic violence causing physical harm, bodily injury, or the infliction of immediate fear thereof; an adverse impact on the children's best interests; or a risk of harm to the children to warrant a parenting plan restriction for domestic violence.

With regard to the neglect factor, the court summarized several alleged incidents that Jenifer presented during her testimony and, after reviewing each incident, the trial court found that "[n]one of these events, if true, rise to child abuse or neglect." With regard to the substance abuse factor, the court considered Jenifer's testimony alleging that David abused marijuana, found that no objective evidence was presented that this was so, determined that "[a]dding protective language to the final parenting plan under section 14 ("Other") is sufficient right now." And with regard to the criminal history factor, the court considered Jenifer's and David's testimony regarding a prior criminal conviction of David's, found that "[n]o one testified [that David's] criminal history gets in the way of his ability to parent," and concluded that "the purpose of this testimony was not about proving or disproving his parenting capacity."

After issuing the above findings and considering the foregoing factors, the trial court concluded that "no limitations or restrictions are entered under RCW

27

26.09.191 because there is no substantial evidence that a danger of damage exists."

The trial court did not err in so concluding. The trial court's findings are verities on appeal. The court's findings support its conclusions. Thus, the trial court did not err in concluding that no RCW 26.09.191 limitations were warranted. Accordingly, Jenifer's claim fails.[17]

C

Jenifer next asserts that the trial court, after considering the parenting plan factors set forth in RCW 26.09.187(3), abused its discretion by not determining that Jenifer should have substantially more residential time than David with their children. Again, Jenifer does not establish an entitlement to appellate relief.

Where a court finds that "the limitations of RCW 26.09.191 are not dispositive of the child's residential schedule," RCW 26.09.187 sets forth that a trial court shall consider the following factors:

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
> (iii) Each parent's past and potential for future performance of parenting functions as defined in RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
> (iv) The emotional needs and developmental level of the child;

---

[17] Jenifer nevertheless asserts that the trial court erred because the court did not adopt as its findings of fact certain of her concerns about the father's parenting capacity and because, if the trial court had given more weight to her testimony as to each factor, she would have prevailed. The trial court did not find Jenifer's testimony in this regard persuasive and thus attributed an appropriate quantum of weight to her allegations regarding David's parenting capacity. We do not revisit a trial court's credibility determinations nor reweigh the evidence on appeal. Merritt, 200 Wn. App. at 408. Thus, Jenifer's assertions fail.

(v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

Factor (i) shall be given the greatest weight.

RCW 26.09.187(3)(a).

Here, the trial court concluded that equal residential time between the parents with the children was appropriate. The court considered each of the seven factors above and presented detailed findings of fact as to not only the parties' testimony, but also Ms. Battisti's testimony and her parenting evaluation. In summary, the court found that (1) the children are equally attached to both parents and that no party has a stronger or more stable relationship with the children or the other, (2) the parties had agreed to nearly equal parenting time with one another and historically encouraged each other's relationships with the children, (3) each parent had made efforts to prioritize their children during their transition to single parenthood and the coronavirus pandemic, (4) each parent is involved in each child's emotional and developmental needs, including their school and extracurricular activities, (5) the parties had agreed to make Seattle their home, with the children attending the same elementary school since kindergarten and extensive pre-pandemic involvement in local activities, (6) the children want more time with both parents, and (7) each parent had a flexible work schedule.

29

On appeal, Jenifer does not specifically assign error to any of these findings. They are, therefore, verities on appeal and our review is limited to determining whether the findings support the trial court's conclusions of law and judgment. Santore, 28 Wn. App. at 323.

The trial court did not abuse its discretion in considering the residential schedule factors in establishing the permanent parenting plan. The trial court thoroughly considered each of the seven factors required by RCW 26.09.187(3), considered the evidence adduced at trial, and issued detailed findings for each factor. The trial court's findings support its conclusions of law. [18]

Thus, the trial court did not err in determining that equal residential time for the parents in this matter was appropriate.[19] Accordingly, Jenifer's claim again does not establish an entitlement to appellate relief.

---

[18] Jenifer nevertheless contends that the trial court should have entered a residential plan in which the children would spend a greater amount of time with her. In so doing, she presents her own analysis of the seven factors and concludes that all of the factors favor her. However, Jenifer does not specifically assign error to any of the trial court's findings in support of its determination that the factors in question support equal residential time. As discussed above, these findings therefore become verities on appeal and the resulting issue on appeal is whether the trial court's conclusions follow from its findings. RAP 10.3(a)(4), (g). In this regard, we answer in the affirmative.

Jenifer also asserts that the trial court erred by entering a parenting plan and corresponding residential schedule that did not reflect her historical role as primary caregiver for the children. Jenifer's assertion is, in essence, that the trial court erred because the court did not treat her historical role as the primary caregiver as creating a presumption that the children should be predominantly placed with her. However, such a view has not been the law for more than three decades. See In re Marriage of Kovacs, 121 Wn.2d 795, 800, 854 P.2d 629 (1993) ("The Parenting Act of 1987 does not create a presumption in favor of placement with the primary caregiver. Instead, the Act requires consideration of seven factors and provides that the child's relationship with each parent be the factor given the greatest weight in determining the permanent residential placement."). Kovacs remains good law. Accordingly, Jenifer's assertion fails.

[19] Nevertheless, Jenifer asserts that the trial court violated a statutory provision barring a trial court from drawing a presumption regarding a permanent parenting plan's residential time schedule from a temporary parenting plan's residential time schedule. RCW 26.09.187(3)(a).

However, the record in this matter does not reflect that the trial court drew any presumptions from the parties' temporary parenting plan in entering the permanent parenting plan. Rather, it reflects that the court merely acknowledged the existence of the parties'

V

Jenifer next contends that the trial court erred by denying her request for relocation with the parties' children. We disagree.

A

"We . . . review a trial court's decision to grant or deny a petition for relocation for abuse of discretion." In re Marriage of Abbess, 23 Wn. App. 2d 479, 484, 516 P.3d 443 (2022) (citing In re Marriage of Horner, 151 Wn.2d 884, 893, 93 P.3d 124 (2004)). In so doing,

> [w]e emphasize that trial court decisions in dissolution actions will be affirmed unless no reasonable judge would have reached the same conclusion. In re Marriage of Landry, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985). "The emotional and financial interests affected by such decisions are best served by finality. The spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court." Id. at 809.

In re Marriage of Kim, 179 Wn. App. 232, 240, 317 P.3d 555 (2014).

Indeed, "[a] trial court's decision to permit relocation is necessarily subjective." Kim, 179 Wn. App. at 244 (citing In re Marriage of Grigsby, 112 Wn. App. 1, 14, 57 P.3d 1166 (2002)). We do not reweigh the evidence presented at trial. Kim, 179 Wn. App. at 244 (citing In re Marriage of Kovacs, 121 Wn.2d 795, 810, 854 P.2d 629 (1993)).

---

temporary parenting plan and then proceeded, as detailed herein, to conduct an analysis of the statutory factors set forth in RCW 26.09.187(3)(a). Jenifer does not provide cogent argument or analysis in support of the notion that acknowledging the existence of a temporary parenting plan constitutes drawing a presumption therefrom. Therefore, her assertion fails.

B

Jenifer asserts that the trial court abused its discretion in its consideration of the factors relating to relocation with children. We disagree.

RCW 26.09.525 provides that "[i]n determining whether to restrict a parent's right to relocate with a child . . . , the court shall make a determination in the best interests of the child considering the factors set forth in RCW 26.09.520." RCW 26.09.525(1)(b).

The factors set forth in RCW 26.09.520 are as follows:

(1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;
(2) Prior agreements of the parties;
(3) Whether disrupting the contact between the child and the person seeking relocation would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;
(4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;
(5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;
(6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
(7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;
(8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
(9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
(10) The financial impact and logistics of the relocation or its prevention[.]

32

RCW 26.09.520.[20]

Here, the trial court issued extensive findings and conclusions as to each of the relocation factors, considering and weighing the parties' testimony, and Ms. Battisti's testimony and her parenting evaluation. In summary, the court found that the relationships factor did not favor either party because "[t]he children have positive relationships with both parties," "are accustomed to spending significant and frequent time with both parties," and "are equally attached to both parties." The court found that the agreements factor favored David's objection because, until the relocation petition, the parties had agreed to make their home and raise their children in Washington.

The court next found that the contact factor favored David's objection because significantly limiting the children's contact with either party would harm the children and, if the relocation were permitted, David would be subject to potential future disruptions in his contact with them. The court found that the statutory limitations factor did not apply because the court imposed no RCW 26.09.191 limitations on the parties.

The court also found that the reasons for moving factor favored Jenifer because they were given in good faith and Jenifer has the chance to save money and live in a bigger house with a nearby pool if she relocated. The court found that the reasons for objecting factor favored David because his objection to Jenifer's relocation petition was in good faith, sincere, and came out of out of his

---

[20] The 11th factor to consider involves temporary relocation petitions and is therefore inapplicable to this matter. RCW 26.09.520(11).

desire not to limit contact with the children. The court found that the children factor favored Jenifer because of the affordability and programs offered by the schools in Arizona that would cater to the children's special needs.

In addition, the court found that the quality of life factor did not favor either party because neither location was superior to the other. The court found that the other arrangements factor favored David because video chat is available but not a substitute for physical touch or in-person view of games or lessons. The court found that the alternatives factor favored David because David's business contacts are in the area and he does not have the financial ability to preserve his current level of interaction with the children if they moved, whereas Jenifer can do her independent contractor work from home and she has more financial flexibility to fly back and forth from Arizona. The court found that the financial factor favored Jenifer because of the benefits of having housing costs and insurance paid for, of having her maternal grandparents nearby, and that she would have significant cost savings and more choices about how to use her time.

Given all of that, the trial court determined that it would not allow Jenifer's relocation with the children. In so determining, the court concluded that

> [t]he numerous gains presented by the move to [Jenifer], including the overall result of less stress for [David] are <u>significant</u>. If the presumption in RCW 26.09.520 were to apply, then the gains would probably favor relocation.[21] Without the presumption, [m]ore of the relocation factors, especially when all factors are balanced, favor [David's] objection. It is not in the children's best interest to move right now. [Jenifer's] request for relocation with children is denied.

---

[21] We discuss, infra, the trial court's decision to not apply the presumption in favor of a relocation request set forth in RCW 26.09.520.

On appeal, Jenifer does not specifically assign error to the foregoing findings. They are, therefore, verities on appeal and our review is limited to determining whether the findings support the trial court's conclusions of law and judgment. Santore, 28 Wn. App. at 323.

The trial court did not abuse its discretion in denying Jenifer's request for relocation with children. Here, too, the trial court thoroughly considered the applicable statutory factors, considered the evidence adduced at trial, and issued detailed findings for each factor. The trial court's findings support its conclusions of law. Given all of this, the trial court did not abuse its discretion in denying Jenifer's request for relocation with the children.

C

Nevertheless, Jenifer asserts that the trial court erred by proceeding to conduct its relocation with children analysis without applying the statutory rebuttable presumption that her petition for relocation will be permitted. Jenifer is mistaken.

Jenifer correctly identifies that RCW 26.09.520 creates a rebuttable presumption in favor of the request for relocation with a child.

> The person proposing to relocate with the child shall provide his or her reasons for the intended relocation. There is a rebuttable presumption that the intended relocation of the child will be permitted. A person entitled to object to the intended relocation of the child may rebut the presumption by demonstrating that the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person, based upon the following factors.

RCW 26.09.520.

Significantly, however, the subsequent statutory provision sets forth a circumstance in which this presumption does not apply: "[i]f the person proposing relocation of a child has substantially equal residential time: (a) *The presumption in RCW 26.09.520 does not apply*." RCW 26.09.525(1) (emphasis added).

Moreover, we have recently held that, "when both a residential schedule and a petition to relocate are contested issues at trial, a trial court must determine whether one parent is entitled to a majority of residential time using criteria for a permanent residential schedule before applying the relocation factors." Abbess, 23 Wn. App. 2d at 489. That is what the trial court did herein.

As set forth above, the parties' residential parenting schedule and Jenifer's request to relocate with their children were contested issues at trial. After trial, the court ruled that a residential schedule of equal residential time between the parents with their children was appropriate. Thereafter, the trial court addressed Jenifer's relocation request, considered the factors discussed herein and, in so doing, did not apply a presumption in favor of Jenifer's relocation request.

The trial court did not err by so proceeding. Jenifer was the party requesting relocation with children, the trial court ruled that both parties would have equal residential time with the children and, therefore, the presumption in favor of relocation did not apply to the court's consideration of Jenifer's relocation request. RCW 26.09.520, .525(1). Accordingly, the trial court did not err by not applying a presumption in favor of Jenifer in its consideration of the statutory relocation factors. Jenifer's argument to the contrary fails.

36

VI

Lastly, Jenifer asserts that the trial court abused its discretion by entering mutual restraining orders against the parties in this matter. Again, we disagree.

Trial courts in dissolution proceedings have broad statutory and equitable authority to impose and fashion restraining orders. Blackmon v. Blackmon, 155 Wn. App. 715, 721-22, 230 P.3d 233 (2010) (protection and restraining orders are essentially a type of injunction and are equitable in nature). RCW 26.09.050 regards restraining orders and provides that "[i]n entering a decree of dissolution of marriage . . . , the court shall . . . make provision for the issuance within this action of the restraint provisions of a domestic violence protection order or an antiharassment protection order under chapter 7.105 RCW." RCW 26.09.050(1).

We review a trial court's decision to impose a restraining order for abuse of discretion. In re Marriage of Freeman, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). In addition, an appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). As a corollary, we will generally not consider claims unsupported by citation to authority, references to the record, or meaningful analysis. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Here, the trial court issued a restraining order against both parties, finding that "a mutual restraining order would benefit the parties by limiting contact, except as provided in the parenting plan," and that such restraining orders would include a distance limitation of 120 feet. In the court's final orders, the court

37

found that Ms. Battisti's testimony that "each party engaged in profanity, threatening, hostile and embarrassing comments about the other" was persuasive, that the parties engaged in physical and verbal aggression toward one another, and that the parties had a history of sending demeaning and threatening text messages to one another. In issuing its orders, the court instructed the parties to continue to use an online resource to monitor the tone of their communications with one another and that

> the parties are limited to communication about decisions for the children, including health care and education, and the children's general wellbeing. Any harassment will warrant modification of the joint decision-making provisions. Neither parent shall disparage the other in the children's presence or in communications sent to or available to the children. There is no legitimate purpose for disparagement. The parties shall remove the children from the presence of anyone who is bad-mouthing the other parent. Neither parent will involve the children in litigation, and any discussion of the parents' conflict must occur within a therapeutic setting only.[22]

Jenifer does not establish trial court error. As an initial matter, Jenifer does not present sufficient argument, analysis, or authority to support her claim. Indeed, her appellate briefing neither identifies with specificity any findings underlying the trial court's order that, she contends, are erroneous nor does she provide decisional authority or analysis supporting any purported abuse of

---

[22] The judge also ruled that
[t]he parties will have joint decision-making for the following two reasons: (1) the proposed parenting plans call for joint decision-making, and (2) neither party at trial testified they were opposed to joint decision-making. Cautious optimism suggests the parties might co-parent better when the adversar[ial] nature of litigation passes because the parties were truly successful as co-parents at the start.

discretion. Therefore, we do not consider this claim. RAP 10.3(a)(6); Cowiche Canyon, 118 Wn.2d at 809.

Furthermore, even if we did consider this claim, the trial court did not abuse its discretion by issuing the restraining orders at issue. The trial court, as part of issuing its order dissolving the parties' marriage, had authority to issue the restraining orders herein upon lawful exercise of its broad discretion and equitable authority. RCW 26.09.050. In the absence of specific argument or analysis by Jenifer, the court's exercise of discretion must appear manifestly unreasonable or untenable. The record does not so reflect. The court's findings are extensive and well-supported.[23]

Thus, Jenifer fails to establish that the trial court abused its discretion when it issued mutual restraining orders against the parties conditioned on the terms of the court's parenting plan. Accordingly, Jenifer's claim does not establish an entitlement to appellate relief.

Affirmed.

_Dwyer, J._

---

[23] Jenifer nevertheless relies on what she identifies as the "DV Manual for Judges" in purported support of her assertion on appeal. Br. of Appellant at 36. However, Jenifer does not provide any analysis, proper citation, or legal authority in support of how that document constitutes binding or persuasive authority on appeal. We do not consider claims unsupported by argument or authority. RAP 10.3(a)(6). Thus, Jenifer's claim fails.

Jenifer also relies on RCW 7.105.310(4)(b), for the proposition that, absent a petition by David, the court should not have entered the restraining order against her. This claim fails as well. As discussed above, the court has discretionary authority pursuant to RCW 26.09.050 to issue a restraining order in the course of dissolving a marriage, which includes the authority to issue mutual restraining orders.

WE CONCUR:

_Chung, J._       _Brennan, J_